Carl S. Eggimann, as Administrator of the Estate of
Robert E. Eggimann, Deceased, Plaintiff-Appellee,
v. David Wise, Defendant-Appellant.
Arthur Walgrave and Wilbur Walgrave, as Adminis-
trators of the Estate of Virgil M. Walgrave, De-
ceased, Plaintiffs-Appellees, v. David Wise, De-
fendant-Appellant.

Gen. Nos. 64–21, 64–22.

Third District.
November 19, 1964.
Rehearing denied February 3, 1965.

Peterson, Johnson & Martin, of Princeton (Watts C. Johnson and Donald C. Martin, of counsel), for appellant.

Andrews & Andrews, of Kewanee, for Carl S. Eggimann, appellee. D. J. McRae, of Kewanee, and William F. Kirman, of Annawan, for Arthur Walgrave and Wilbur Walgrave, appellees.

CULBERTSON, P. J.

These actions in both the Trial Court and in this Court, have been consolidated. The cause of action for each plaintiff, suing as administrator of a decedent, arose out of the same automobile collision. This is the second trial of these actions since a prior trial resulted in an appeal to this Court, and a reversal and remand-

ment for new trial by reason of inconsistencies of verdicts and instructions involved in ordinary negligence and wilful and wanton counts (Eggimann v. Wise, 41 Ill App2d 471, 191 NE2d 425).

Both the actions were brought against the same defendant, David Wise, and originally contained three counts, the first count being for a recovery for the wrongful death of the representatives decedent, occasioned by ordinary negligence. The second count charged wilful and wanton negligence, and the third count of each complaint on behalf of the estate of the decedents, alleged, because of the ordinary negligence of the defendant, the plaintiffs administrators, were required to spend money for funeral expenses, and hospital and medical expenses, and demanded judgment for the amount of those expenditures. A counterclaim was also filed by defendant, charging injuries against the administrator of the estate of Virgil M. Walgrave, who was the driver of the vehicle in which the decedents were riding. Upon the second trial of this cause, from which this appeal is taken, count two in each case, charging wilful and wanton negligence, was dismissed by plaintiffs.

The jury returned a verdict for the plaintiff administrator of the estate of Robert E. Eggimann, deceased, on the wrongful death count, in the sum of $6,000, and upon count three, in the sum of $853.15. The jury also returned a verdict for the administrator of the Virgil M. Walgrave estate on the wrongful death count, in the sum of $9,000, and upon count three, in the sum of $3,840.39. In the latter case, the decedent had survived for twelve days and was treated medically during such period. It is from the judgments upon these verdicts that the appeal is taken. The counter-defendant was found not guilty on the counterclaim of defendant, David Wise, and no appeal is taken on this judgment.

387

These actions grew out of a collision between an automobile driven by Virgil M. Walgrave, deceased (in which Robert E. Eggimann, deceased, was riding), with an automobile being driven by defendant, David Wise. Both Walgrave and Eggimann died as the result of the injuries sustained in the collision. Each decedent was survived by collateral next of kin, i. e., brothers and sisters, or children of a deceased brother or sister. Neither was or had been married. Eggimann was sixty two years old, and Walgrave was thirty-seven years of age. There were no eye-witnesses qualified to testify to the occurrence. The collision happened shortly after midnight on June 11, 1961, on State Route 78, a two-lane asphalt blacktop highway, approximately five miles north of Kewanee. There is a broken white centerline, and on each side of the road there is a yellow line. The collision occurred on a curve towards the north, which is wide and sweeping. The highway was dry. At the time of the collision Walgrave was driving a 1954 Ford from the direction of Kewanee, and going to his home in Annawan; and defendant Wise, was driving a 1957 Ford south on Route 78 from Annawan, approaching the curve from the north. Marks were found on the highway in the northbound east lane of traffic, which began on the east side of the lane of traffic at about the center line, and went south two hundred feet, stopping at the pile of debris. The Wise car was found completely in the east lane of traffic, and the debris consisting of glass, metal, and dirt, was also in the east lane of traffic. The Walgrave car, when it came to rest, was headed north at an angle, off the east side of the road. The cars were not moved until the wrecker arrived. The testimony of the witnesses and the photographic evidence tended to establish that the collision occurred in the lane of traffic in which Walgrave should

have been driving, and that both automobiles were located on that side of the road after the collision.

Eggimann died shortly after he was removed from the automobile, and Walgrave died twelve days later. One of the first to arrive at the scene of the accident, by coincidence, was Dr. William B. Larson, who had been Walgrave's physician for fifteen years prior to the accident. He examined Walgrave at the scene of the accident, and at a hospital later, and found that he had a fractured jaw, fractured right leg, fractured right ankle, and fractured left leg, and internal injuries. Walgrave had been in good health prior to the accident. He was a bachelor, thirty-seven years of age at his death, and left surviving four brothers and a sister. The evidence disclosed that for a number of years during the winter he would go to the farm of one of his brothers and help him shell corn, haul grain, and work with livestock; that one winter he laid floors in the house, and did not ask or receive any payment for such services. For another brother with eight children, the decedent had helped when the brother started farming. He had helped him move to another farm, and helped on the new farm until he was settled. Later he helped with field work, and helped care for the children while the brother's wife was confined during childbirth. The decedent also took care of the family and farm while the brother was at the Mayo Clinic, and visited that brother several times a year, helping with jobs requiring two men. He had also helped pay for the house. He had never accepted any payment for these services. Walgrave lived with a third brother for whom he also performed services.

Robert Eggimann was a bachelor, and lived with his surviving sister. He performed substantial services for his sister for many years prior to his death, including the painting of the house, and papering walls, lifting the house, digging a cellar, and laying

blocks for cellar walls, buying groceries, washing and wiping dishes, and sweeping floors, and purchasing clothing and other articles for her. His sister did not drive an automobile and decedent furnished all the transportation for her and her family for several years.

On appeal in this Court, defendant contends that there was no showing that he was guilty of negligence; that the Trial Court erred in ruling on evidence, and instructions given and refused in the case; that no action was maintainable for recovery of medical and funeral bills on behalf of the administrators; and that the evidence in the case limited the damages for wrongful death, to only nominal damages.

Defendant apparently contends that in an action by collateral next of kin, to recover damages, the recovery must be limited to only nominal damages for the reason that where parties lived together as members of a family, the law does not imply a contract to pay for services, but that the services are rendered gratuitously. The issue in such cases is not, however, whether there was a contract to pay for services or contributions since normally such services or contributions are not made the subject of a contract or agreement to pay, but whether or not the surviving collateral next of kin sustained a pecuniary injury by reason of the death. Services of the type referred to, which appeared with evidence, were of value, and on the record it was clear that the specific collateral next of kin did, in fact, sustain pecuniary injuries by reason of the death of the decedent.

Pecuniary injury or loss cannot be exactly determined, but the evidence afforded sufficient data from which the extent of the pecuniary loss can be reasonably ascertained, and personal services of a decedent is one of the elements of pecuniary loss (McFarlane v. Chicago City Ry. Co., 288 Ill 476, 482, 123

390

NE 638; Rasmussen v. Clark, 346 Ill App 181, 104 NE2d 325).

In Ferraro v. Augustine, 45 Ill App2d 295, 196 NE 2d 16, the Court pointed out that the testimony that decedent was capable of and did a substantial amount of work around the house provided the basis for a recovery of pecuniary damages in a wrongful death accident. In this connection the contention of appellant with respect to instructions as to pecuniary loss, in substance, are bottomed on the premise that recovery where the decedent is survived by collateral next of kin, should have specifically directed the attention of the jury to the fact that it could give nominal damages only, if there was no proof of actual pecuniary loss. Instructions which in substance told the jury they could not find more than nominal damages against defendant, or selecting certain items related to this issue, were denied by the Court. Other instructions given in the case clearly set forth the standard and approved rule on the subject of damages as applied to a case where the next of kin are collateral, rather than lineal, since there was clear evidence of contributions and services by both decedents to the next of kin, showing some actual pecuniary loss, it was proper to refuse the nominal damage instructions, since the extent of the actual pecuniary loss was the only question on damages.

A further element and reason for rejecting instructions arose from the fact that there was also a claim for funeral expenses in both cases, and in the Walgrave case, substantial medical expenses, and that a direction for nominal damages could not be applied to such claim under any theory. There was, therefore, no reversible error in the admission of evidence of services, and in the admission and refusal of instructions on the question of damages, as indicated.

■ In a previous appeal in this Court, defendant had contended that the Court improperly allowed the administrators to sue separately, and as an additional cause of action, for reimbursement of funeral, hospital, and medical expenses of the plaintiffs' intestate. In that case this Court specifically indicated that we felt there was no merit in this contention. It was pointed out that there could be no recovery for funeral and medical expenses under the Wrongful Death Act in the counts based on such action, but we could see no just reason why the administrators, as a separate cause of action, even though there was no surviving widow, could not bring a suit for hospital, medical, and funeral expenses incurred by them, if under the facts there otherwise is a cause of action, i. e., if the damages were proximately incurred by reason of the negligence of the defendant, and the decedent was not contributorily negligent. We therein cited Saunders v. Schultz, 20 Ill2d 301, 170 NE2d 163. On this second appeal defendant seeks to distinguish the case of Saunders v. Schultz, and contends that the principle is applicable only where there was a surviving spouse. We cannot agree with this contention since the Supreme Court of our State in that case, specifically stated, at page 312, "Inasmuch as it is the genius of our common law that it can be, and is, responsive to the changing obligations and relationships within our legal system, we believe that the common law should be construed to permit the recovery of such funeral and medical expenses in an action either by the decedent's estate, or, as in the instant case where no such claim was made, by the surviving spouse. This interpretation is supported not only by cogent reasoning, but by the dominant judicial opinion in other jurisdictions, and earlier decisions of our Courts." The Court went on to point out that the estate or the spouse, either or both, as the circumstances indicate, are entitled to re-

cover for pecuniary losses suffered by either or both, which are not recoverable under the Wrongful Death Act, and all cases holding to the contrary, were expressly overruled. We must, therefore, conclude that the judgments for funeral and medical expenses were proper.

Another point made by defendant is to the effect that there was not sufficient proof that the death of Walgrave was proximately caused by the accident. As we have indicated, Dr. Larson came along shortly after the accident. He found Walgrave in the driver's position, hanging out of the car by his feet. He later saw Walgrave in a hospital, found him in a state of shock, with multiple fractures and multiple lacerations, and with probable internal injuries. Shock therapy was started, and a tube was inserted to facilitate breathing. He was treated by the Doctor from the 11th to the 14th, by sandbagging the fractures, and giving Walgrave more blood and more plasma. His condition rapidly deteriorated over the four-day period, including his kidney function. Because the shock was so serious nothing more was done to the fractures. Another Doctor testified that he was called to render medical aid, and confirmed the findings of Dr. Larson who first treated Walgrave. The second Doctor stated that he saw him on the morning when Walgrave was taken to Iowa City, and at that time felt that his urinary output was almost nil, and he should be given the opportunity of having a kidney machine that was in use at the Iowa City Hospital. There was no evidence that Walgrave suffered any other injury or illness, or had any other physical conditions which might have led to his death on June 23, 1961 at the University of Iowa Hospital.

■■ Defendant's contention is that since no evidence was presented of the further course of treatment at the Iowa City Hospital, or of findings after death

(presumably by post mortem) that some other intervening cause could have been the reason for his death. The first treating physician who was called as a witness, testified in answer to a hypothetical question based on his findings and the findings in evidence as to Walgrave, that the death of Walgrave could have proximately resulted from the accident. Defendant contends that since there is a speculative possibility that something such as an intervening heart attack, not directly connected with the accident, might have caused his death, that there was a failure to establish that the accident was the proximate cause of death. We cannot agree with such conclusion, since it is possible, speculatively, in any case where there is no precise post mortem examination or close and continuous observation, to speculate about the possibility of an intervening cause. In absence of specific evidence of any such causation, and on the basis of the record which was presented in this case, the jury were entitled to find and did find that the death of Walgrave proximately resulted from the accident. Where a plaintiff makes proof by a preponderance of the evidence and the highest degree of proof available to him, he has discharged the obligation required in a civil case and is not required to make such proof beyond all reasonable doubt (Woolley v. Hafner's Wagon Wheel, Inc., 22 Ill2d 413, 176 NE2d 757).

It is finally contended by defendant that there was no evidence of due care on part of decedent Eggimann who was a passenger in the automobile driven by Walgrave. There was testimony as to the habits of due care of Eggimann. Eggimann was riding in the front seat of the car being driven by Walgrave. There was evidence that Walgrave was driving on the right side of the road and that he was sober, and further evidence that he was in the exercise of due care at the time of the collision, and was a careful and prudent driver.

It is stated in Gillan v. Chicago, N. S. & M. Ry. Co., 1 Ill App2d 466, at page 473, 117 NE2d 833, "when the driver exercises due care there is a fair inference that the passenger who does nothing, is in the exercise of due care." At the very least, the question was one for the jury to determine and not for the Court to determine, as a matter of law (Lasko v. Meier, 394 Ill 71, 67 NE2d 162).

Upon a careful review of the entire record, it is apparent that there was no reversible error, and that the judgments were properly entered. The judgments of the Circuit Court of Henry County are, therefore, affirmed.

Affirmed.

ROETH and SCHEINEMAN, JJ., concur.