Roscoe Redding, Plaintiff-Appellant, v. Leo Schroeder, Defendant-Appellee.

Gen. No. 49,511.

First District, First Division.

December 14, 1964.

Sennett, Levin, Craine & Stride, of Chicago (Herbert F. Stride and Louis S. Elovitz, of counsel), for appellant.

Querrey, Harrow, Gulanick & Kennedy, of Chicago (John T. Kennedy, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiff appeals from a not guilty verdict and judgment entered in his personal injury action and seeks a new trial because of asserted prejudicial trial errors.

On April 27, 1961, at about 2:30 in the afternoon, while standing or walking on or immediately adjacent to Willow Road, an undivided two-lane highway, several hundred feet west of the intersection of Waukegan Road, plaintiff, Roscoe Redding, was struck and severely injured by an automobile driven by defendant, Leo Schroeder. There were three occurrence witnesses—the plaintiff, who testified that he was standing at the edge of the road when struck, the defendant, and a disinterested bystander, both of whom in substance testified that plaintiff walked into the side of the defendant's car.

Plaintiff testified that he was driving a tractor west on Willow Road, on the paved part of the highway, when he noticed a tractor driven by Peter Reh coming east on Willow Road. Reh waved, and plaintiff pulled off on the right shoulder and parked his tractor four to six feet from the paved part of the highway. The tractors were stopped almost directly across the road from each other. As plaintiff walked from behind the rear wheels of his tractor toward the road, he looked east and saw a car travelling west and going about 30 miles an hour. "I walked up to the edge of the road and put my left foot on the edge of the road, the drain, and stood there and watched it"—the approaching car. At that time Peter Reh was on the south side of the road, "yelling at me but I couldn't hear what he was saying." When the car, which was headed west, "got to about fifteen or twenty feet of me . . . it swerved over towards me and he whipped the back towards the center line and the car hit me about where the antenna was." He heard no horn

308

sound or screech of brakes, and later regained consciousness in the hospital.

On cross-examination plaintiff testified, " . . . As I stood on the side of the road I continued to watch his car. . . . I did not see it accelerate any faster than 30 MPH and it was on the North half of the road for westbound traffic. He was in his proper right-hand lane. He never got off the edge of the road onto the shoulder that I saw and his four wheels were always in the same westbound lane of Willow Road. I could see the man driving the car but could not see if his appearance was normal. I was watching the car. . . . I stood still with the left foot on the road and the right foot on the shoulder until the accident happened. I just stayed there stationary. . . . I was looking straight East with the left foot on the pavement. . . . The point of impact was with my left leg."

Defendant Schroeder, called under section 60 of the Civil Practice Act, testified he was travelling west in the north half or westbound lane of Willow Road, at under 30 miles per hour. There were no cars ahead of him going west, "but there were three cars coming from the east." Defendant saw two tractors standing on opposite shoulders of the road when he was 150 to 200 feet east of them. Peter Reh was on the seat of the tractor on the south shoulder, and plaintiff was standing on the north shoulder, facing south and west on an angle, talking across the road to Peter Reh. Defendant did not see plaintiff move from this position until impact, and he never altered the path of his automobile, nor crossed the center lane, nor went onto the shoulder before the impact, nor applied his brakes prior to the impact. "As I proceeded west my vehicle and the pedestrian came into contact with each other. The right fender of my

car met with Mr. Redding's body approximately four feet in back of the bumper on the right side of my car." Defendant applied his brakes simultaneously with the impact, the car stopped 25 to 30 feet beyond, defendant got out of his car, and saw plaintiff lying on the north shoulder about three feet off the road.

The other tractor driver, Peter Reh, the only disinterested eyewitness, testified on behalf of defendant. He said that on the day of the occurrence, his tractor and plaintiff's were travelling in opposite directions on opposite sides of Willow Road; that he stopped his tractor 20 to 30 feet west of plaintiff's; that plaintiff stepped down off his tractor, turned and began to walk in a southerly direction to the edge of the highway; that Reh never saw plaintiff turn or look toward the east, the direction from which defendant's car was approaching, although Reh himself saw the approach of defendant's car at a constant speed of 35 miles per hour. Reh further testified that plaintiff walked into the right front fender of the car, the impact throwing him onto the shoulder of the road. During this entire time, plaintiff was within view of Reh.

On cross-examination, Reh stated visibility was good and the road was straight. When plaintiff alighted from the tractor, defendant's car was 150 feet away. Reh watched plaintiff—"Redding had his head down looking at the ground. I saw him walk toward me and I knew the car was coming. . . . I did not have time to yell."

Still under cross-examination, Reh was questioned as to whether plaintiff was on the paved part of the highway or on the shoulder at the time of the occurrence, and he replied, "Paved." He was then questioned about his evidence deposition of August

3, 1962. To one of the deposition questions as to "how far he was onto the road when the accident happened," Reh answered, "I would say two steps, step-and-a-half."

Reh was then further cross-examined as to whether defendant's automobile altered its course "from the time it was 150 feet away from Mr. Redding until the time it stopped," and he answered, "The only time it altered [its course] was when it drove on the shoulder after he hit . . . ." He was again questioned about an answer which he did not recall giving in his evidence deposition as to what the car did immediately prior to the occurrence. He was also questioned about a written statement, dated May 3, 1961, and signed by him.

On redirect, and over plaintiff's objection, defendant's counsel then proceeded to read the whole of the Reh statement of May 3, 1961, into the record, and it included, "I saw a dark green sedan also coming west on Willow Road at about 30 to 35 m.p.h. I started to holler at Mr. Redding as I saw that Mr. Redding was looking at me and obviously did not see the car. He walked about two steps out into the road just as the car was passing, and the car swerved to the left to try to avoid him. Mr. Redding just walked into the right front side of the car about the middle of the right front fender. . . . Mr. Redding was trying to get up. He was not unconscious at any time. He said his leg hurt. I told him to lay where he was."

Still on redirect, he was further questioned as to the answers given by him in his evidence deposition of August 3, 1962, as to the location of plaintiff at the time of the impact. Reh was then excused, left the courtroom, and was never recalled. On the fol-

lowing day, the jury was reassembled, and just prior to closing arguments, defendant was permitted to read into evidence certain questions and answers taken from the evidence deposition of the witness Reh.

■ Plaintiff contends that it was prejudicial error to read part of the Reh evidence deposition after Reh had left the courtroom, without compliance with the prerequisites prescribed for the use of evidence depositions by Supreme Court Rule 19–10(3). Plaintiff argues that when defendant's witness, Reh, was on the stand, defendant had every opportunity to rehabilitate his discredited witness by partial use of the deposition to clarify the impeaching material used by plaintiff's attorney, and did so; that "it is an unfair burden upon the plaintiff to allow such testimony to be read to the jury after the witness has been excused without the right to cross-examine into the issues which are, obviously, because of their use, material to the issues in the case."

We agree with plaintiff and hold, under the circumstances, it was error for the court to permit, over objection timely made, the reading into evidence in the presence of the jury of part of an evidence deposition without compliance with subsection (3) of Supreme Court Rule 19–10.

Plaintiff next contends that it was prejudicial error for the court to permit counsel for the defendant to read into evidence, in the presence of the jury, the 3-page written statement signed by Reh, under date of May 3, 1961, "as only a portion of the statement was used for the purpose of impeachment, and that the decisions do not allow prior corroborating evidence to be used to rehabilitate impeached testimony." In support, plaintiff cites Chicago City Ry. Co. v. Matthieson, 212 Ill 292, 72 NE 443 (1904); Biela v. Messner, 18 Ill App2d 236, 151 NE2d 406

(1958); and Nelson v. Northwestern El. R. Co., 170 Ill App 119 (1912).

Plaintiff also argues that it includes a reference to "a passing motorist's statement relating to the occurrence." Also, the statement included, "Mr. Redding was looking at me and obviously did not see the car. . . . The car swerved to the left to try to avoid him." Plaintiff asserts these statements contained conclusions of the witness, and "the party whose witness has been discredited, should be precluded from using the statement as evidence. . . . The jury must have placed too much weight on the testimony of this one individual, after hearing it over and over."

██ We are not persuaded that it was error or abuse of discretion to permit defendant to use the entire May 3, 1961, statement of Reh. Plaintiff had used part of the statement in cross-examining Reh for the purpose of impeachment. We have examined the statement and find that it does include a number of conclusions, but we believe they are inconsequential. We think it apparent that Reh was referring to defendant Schroeder when he said, "the other driver said that Mr. Redding sure did not look to see if a car was coming." We believe this situation comes within the rule expressed in Goertz v. Chicago & N. W. Ry. Co., 19 Ill App2d 261, 153 NE2d 486 (1958), where it is said (p 272):

> "A party impeached or contradicted at the trial by statements made prior to that time, may use the same document to qualify or explain what has been testified to."

See, also, Cleary Handbook of Illinois Evidence, 1963, 2d Ed, § 6.17, p 97, and McCormick on Evidence, Ch 6, § 56, p 132.

■ Plaintiff's next contention shows that the court permitted a police officer to read directly from a police report what defendant told him at the scene of the occurrence—"Mr. Schroeder says, I was proceeding west on Willow Road. All of a sudden the pedestrian stepped into the right side of my car. . . ." The officer was also permitted to state that "we were told he was walking," in response to a question as to what information they obtained "as to what the pedestrian was doing just before and at the time of the occurrence." All of the foregoing was hearsay and improper. Plaintiff's objections were timely made and should have been sustained.

We do not view this case as a close factual situation. Reh's testimony, his evidence deposition of August 3, 1962, and his post-occurrence statement of May 3, 1961, do show some discrepancies, but Reh is consistent in his statement that defendant was in his right lane and "Mr. Redding just walked into the right front side of the car about the middle of the right front fender." Defendant was not impeached, and all three occurrence witnesses—plaintiff, defendant, and Reh—testified that defendant never left his lane until after the impact. At best, plaintiff's testimony shows a lack of due care on his part. While he was watching an approaching car, he stood with his left foot on the edge of the lane occupied by the car and was struck "about where the antenna was" by a car which never left its proper lane.

■ ■ Although the errors in the admission of evidence accentuated the testimony of both Reh and the defendant, we do not believe that the rights of plaintiff were thereby prejudiced or that a new trial would result in a different verdict. As said in Ko-

sowski v. McDonald Elevator Co., 33 Ill App2d 386, 396, 179 NE2d 469 (1962):

> "We are not at liberty to disturb a verdict of the jury in the absence of conviction on the part of this court that the verdict is against the manifest weight of the evidence. . . . The object of review by this court is not to determine whether the record is completely free of error, but to ascertain whether upon the trial there has been such error as might prejudice the rights of a party. And if this court concludes that the record is free of error prejudicial to plaintiff's rights and that upon the facts it is a reasonable assumption that no different verdict would be reached on another trial, the verdict should be affirmed. . . ."

For the reasons given, the instant judgment is affirmed.

Affirmed.

BURMAN and KLUCZYNSKI, JJ., concur.