Frances Spenner, Administratrix of the Estate of Robert G. Spenner, Deceased, and Frances Spenner, Plaintiffs-Appellants, v. Jenkins Party Liquors, Inc., a Corporation, Defendant-Appellee.

Gen. No. 68–85.

Fifth District.

June 19, 1969.

Crain & Hall, of Centralia, and C. E. Heiligenstein, of Belleville, for appellants.

Jones, Ottesen & Fleming, of Belleville (Ralph J. Derango, Jr., of counsel), for appellee.

EBERSPACHER, J.

This action was brought in the Circuit Court of Marion County, Illinois, by Frances Spenner, as Administrator of the Estate of Robert G. Spenner, deceased, and Frances

Spenner individually for herself and minor children for the alleged loss of means of support pursuant to the Dram Shop Act. The corporate defendant, Jenkins Party Liquors, Inc., is the owner and operator of a tavern. The plaintiff has appealed from a judgment upon a jury verdict for the defendant. The plaintiff in its appeal raises three principal issues, i. e., (1) that the Court erred in its admission of certain evidence offered by the defendant and erroneously refused to admit certain evidence offered by the plaintiff; (2) that the defendant's counsel was guilty of impropriety that constituted prejudicial error; and (3) that the verdict of the jury was against the manifest weight of the evidence.

In our opinion the appeal may be disposed of by confining our opinion to the first issue. The objectionable testimony concerns the purported impeachment of a witness called to testify in behalf of the plaintiff.

One of the witnesses testifying in behalf of the plaintiff, Officer Jerry Edmundson, of the Centralia Police Department, testified that he investigated the accident which caused the death of the plaintiff's decedent, along with Sergeant Simon Franklin. On direct examination he stated that upon arrival he went to the truck of the decedent who at the time was still alive; that there was a strong odor of liquor in the truck. The officer went to the hospital where decedent had been transported and that at the hospital the decedent still had the presence of the small of alcohol.

The defendant's counsel then cross-examined the witness, a portion of which is as follows:

"Q. Did you testify before the coroner's jury?
"A. Yes.
"Q. Did you tell the coroner's jury anything about an odor of alcohol?
"A. I believe I did, as I recall.

117

"Q. You say you did?

"A. I believe so, yes.

"Q. Would you read this? Just read this and see if you see anything in it about the odor of alcohol. Did you make any report in which you indicated that there had been drinking?

"A. I, myself, never. It should have been on the accident report.

"Q. In here you didn't indicate at the coroner's inquest, you didn't indicate about all this odor of alcohol.

"A. Well now, they asked if there was anything I could add to Sgt. Franklin's testimony—

"Q. Did you (sic) testify about the odor of alcohol?

"A. I believe so.

"Q. He testified right before you did, didn't he?

"A. I'm not sure on that.

"Q. Then your testimony is that he testified about the alcohol at the coroner's inquest and, therefore, you didn't?

"A. Yes, or they asked if I could add anything to it and I said that he had pretty well covered it.

"Q. But what if he didn't testify to any odor of alcohol?

"A. I never said specifically he did. I said I think he did. I'm pretty sure he did.

"Q. Actually, what would you say if I told you he didn't detect any odor of alcohol?"

Objections to the latter question were sustained by the Court. After the plaintiff had rested its case and the defendant had presented several witnesses, the following offer was made by the defendant's counsel which led to the reading to the jury by defense counsel, the testimony of Sgt. Simon Franklin given at the coroner's inquest:

"Your Honor, since a reference was made to Sgt. Franklin's testimony by Officer Edmundson, at this

time we would like to offer into evidence a certified transcript of the testimony of Sgt. Franklin given at the coroner's inquest; and this offer is being made for the purpose of impeaching Officer Edmundson who has testified as to what Sgt. Franklin testified to at that inquest and in lieu I would accept the stipulation that Officer Franklin did not testify to any odor of alcohol at the scene or at the hospital."

Defendant made no showing of Officer Franklin not being able to appear and testify as to whether he had testified in the coroner's inquest with reference to his detection of any odor of alcohol. Defendant's counsel offered, and the trial court suggested, that the matter should be covered by stipulation. When none was forthcoming, with permission of the court and over the strenuous objection of the plaintiff, the defendant's counsel read to the jury the entire transcript of testimony of Officer Simon Franklin at the coroner's inquest. Two questions and answers in it dealt with the finding of liquor in the truck and automobile; both were answered in the negative; it contained no reference to the use of alcohol by plaintiff's decedent or defendant.

The defendant urges that the purported impeachment was proper and in this regard argues that in order to avoid the effect of the impeachment, Officer Edmundson attempted to give the jury the impression that his reason for omitting this testimony was that Officer Franklin had covered it at the inquest and that he had nothing to add to Officer Franklin's testimony. The argument continues that when the testimony of Officer Franklin at the coroner's inquest was offered it was offered specifically for the purpose of impeaching Officer Edmundson, that is, to show that Officer Edmundson did not hear Officer Franklin testify at the coroner's inquest as to any odor of alcohol. No authority or precedent is offered in support of the defendant's position.

119

■ In our opinion the admission of the transcript of testimony of the police officer at the coroner's inquest requires the reversal of the judgment. We can conceive of no theory under which such admission could be sustained. Impeachment under present Illinois law may follow two alternatives, the first being impeachment by proof of prior inconsistent statement. Podenkirk v. State Farm Mut. Automobile Ins. Co., 325 Ill App 421, 60 NE2d 269 (1945); Vancil v. Fletcher, 90 Ill App2d 277, 232 NE2d 789 (1967).

The second alternative permits the admission of evidence of the omission of a witness to state particular facts, or fact, under circumstances rendering it incumbent upon him to or likely that he would state such fact if true. The first such mode of impeachment consists of evidence that the witness on a prior occasion made an inconsistent statement. The second mode is that the witness on a prior occasion omitted to testify as to an important fact or circumstance. Esderts v. Chicago, R. I. & P. R. Co., 76 Ill App2d 210, 222 NE2d 117; Carroll v. Krause, 295 Ill App 552, 15 NE2d 323. Both modes of impeachment are permissible to cast doubt on the credibility of the witness.

■ The purported impeachment in the present case fits into neither of these two modes, but to the contrary is a transcript of testimony of an individual that has never been called to testify; the reading of it was error. The transcript was prejudicial since it contained irrelevant statements and opinion of parties, witnesses and jurors and primary evidence and matters of substance rather than a limited attack on the explanation offered to excuse the impeachment of the witness. Accordingly, the cause must be reversed and remanded for a new trial.

Reversed and remanded.

GOLDENHERSH and MORAN, JJ., concur.