**Patrick Tuskey, a Minor, By and Through His Father and Next Friend, Joseph Tuskey, Plaintiff-Appellant, v. Robert Callos, Defendant-Appellee.**

Gen. No. 68–194.

Second District.

August 25, 1969.

James A. Thompson, of Chicago, for appellant.

Rathje, Woodward, Dyer and Burt, of Wheaton, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The plaintiff, a minor, brought suit by and through his father in the Circuit Court of DuPage County to recover

his damages for personal injuries suffered in an accident on November 23, 1963, allegedly caused by the negligence of the defendant. The jury returned a verdict in favor of the defendant and the trial court denied the plaintiff's motion for a new trial. This appeal followed.

Patrick Tuskey was four days short of eight years old on the day of the accident. His parents had driven him to St. Joan of Arc Church in the Village of Lisle for religious instruction at approximately 9:30 a. m. When the instructions ended, Patrick left the church and started to walk home since his parents had not yet returned to pick him up.

The church was located east of Main Street and south of the Chicago, Burlington Railroad tracks in the Village, and his home was west of Main and north of the tracks. Patrick walked west on Front Street from the church to Main where he turned north and continued on the sidewalk on the east side of the street. Main Street goes under the railroad tracks a short distance north of Front Street and as Patrick went under this viaduct he started to cross Main Street to the west. He was struck by the defendant's automobile when he was in the southbound traffic lane of Main Street, a few feet north of the viaduct.

Patrick was immediately taken to the hospital where the examining physician found a hematoma on his forehead and numerous abrasions. He was released that day but was referred to a neurologist several weeks later when he continued to suffer dizziness and headaches. It is not necessary to review the medical testimony in detail but the record does disclose that the boy continued to experience headaches, dizziness, seizures, blackouts and other symptoms of a brain injury. The neurologist testified that the boy had post-traumatic epilepsy and that his illness was probably permanent.

The plaintiff contends that the verdict was against the manifest weight of the evidence and that he was denied a

fair trial by the prejudicial conduct of the defense counsel and the trial judge.

Three witnesses testified as to the facts that would determine the legal liability for the accident. Patrick testified that he left the church and started to walk home. The sun was shining, there was snow on the grass, and the surface of Main Street was moist. As he walked under the viaduct, he started to cross Main Street on an angle. He looked both ways before crossing and saw only the defendant's car approximately 300 feet north of the viaduct. He proceeded to cross and was halfway across the southbound lane of Main when he was struck by the defendant's automobile and thrown against the viaduct wall. He felt his head hit the wall. He did not recall that he said anything at the scene but "Mom and Dad."

The defendant, Robert Callos, who was driving south on Main Street, testified that as he approached the viaduct his speed was between fifteen and twenty-five miles per hour; that he had taken his foot off of the accelerator, and that he first saw the boy cross Main Street to the west when Patrick emerged from between two northbound vehicles, about twenty-seven to thirty feet from his car. Upon seeing the boy, he put his foot on the brake and his car struck Patrick a few feet north of the viaduct. His car was practically stopped at the time. He did not notice whether Patrick was knocked completely down but did see him run to the viaduct wall.

Police Chief Worth, of the Village of Lisle, testified that at the time in question he was standing in the middle of Main Street to the south of the viaduct directing traffic coming west on Front Street from the church. He stated that at the time of the accident "the flow of traffic was pretty close to the end . . ." and that there were several cars that had just turned right and gone under the viaduct. He stood in the southbound lane of Main Street and although he did not see the actual impact he saw the boy "hit the pavement." He walked to the scene

and found the boy on his back in the southbound lane with his head about a foot from the center line. Patrick told Chief Worth that he ". . . thought he could make it."

Photographic exhibits of the scene disclose that Main Street is a narrow two-lane road at this point and that there is no sidewalk on the west side under the viaduct. Immediately north of the viaduct there is a path on the west side of Main on an incline. The viaduct itself is low and narrow and the embankment over it would obviously cast a shadow on a sunny day.

Although it is contended that the boy was struck in or near an unmarked crosswalk, there is nothing in the record to indicate that this is correct. Burlington Street intersects Main north of the viaduct but all of the testimony, including that of the plaintiff, is that the impact occurred under or just beyond the viaduct. From the photographs it is apparent that to cross Main Street at this point would be hazardous under any conditions. The plaintiff argues that the defendant, who was a nine-year resident of the area, was aware that this intersection was dangerous yet did not take the necessary precaution required by the situation as he approached the viaduct. The jury obviously disagreed.

■■ As we have seen, the testimony was in conflict as to the presence of other automobiles in the northbound lane at the time of the accident. It is probable that the resolution of that conflict by the jury was of crucial importance in their ultimate determinations. It was the proper function of the jury, as a fact-finding body, to resolve that conflict and to make the ultimate determination as to liability. A court of review should not disturb the verdict of the jury unless it ". . . is clearly wrong, or unless the court is satisfied that the verdict is against the manifest weight of the evidence, and that an opposite conclusion is clearly evident." Smith v. 601

217

Liquors, Inc., 101 Ill App2d 306, 312, 243 NE2d 367; Gary v. Rogers, 104 Ill App2d 154, 158, 243 NE2d 665.

We cannot say that an opposite conclusion would be clearly evident in this case or that the verdict was against the manifest weight of the evidence. Both the defendant and Officer Worth testified as to the presence of other automobiles under the viaduct at the time of the accident. Indeed, it seems unlikely that Officer Worth would have himself been present if there was no traffic to direct. If Patrick had crossed Main under the viaduct, or even a few feet beyond it, between the oncoming cars, it would have been difficult, if not impossible, to see him until he was in the southbound lane.

The plaintiff further contends that prejudicial error was committed in the trial of the cause as a result of the conduct of defense counsel. Chief Worth was called as a witness by the defendant and testified that Patrick told him at the scene "I thought I could make it." The defense then inquired whether the witness could refresh his recollection of the conversation if he referred to his report made shortly after the accident. The plaintiff's attorney objected that there was no indication that the witness had exhausted his recollection. The defense counsel agreed and rephrased the question as follows:

"Q. Would you tell the court and jury, Mr. Witness, from your own independent recollection what the boy said to his father about how the occurrence happened?

"A. Well, when the father arrived, he said 'What happened, son?' And he said, 'I thought I could beat the car.'"

On cross-examination, the witness testified that the boy might have said "I thought I could make it" but believed the word "beat" was used. On redirect, the witness was asked to refresh his recollection from the report as to the language used by the boy and he testified ". . . he thought he could beat the car."

██ It is well known that police reports are inadmissible and their offer into evidence has been condemned. Kelly v. Chicago Transit Authority, 69 Ill App 2d 316, 322, 217 NE2d 560; Smith v. Johnson, 2 Ill App2d 315, 319, 120 NE2d 58. However, they can be used for the limited purpose, as here, to refresh the recollection of a witness. We do not find that any attempt was made to offer the report itself into evidence.

██ In final argument, the defense counsel stated that although, through oversight, no evidence as to skid marks had been presented, he believed the marks were short. In his brief, the defendant maintains that this statement was a reasonable inference that could be drawn from the evidence. We recognize that broad latitude is afforded attorneys to draw all reasonable inferences from the evidence in their final argument. Maddox v. Smith, 67 Ill App2d 374, 383, 214 NE2d 5; Keller v. Menconi, 7 Ill App2d 250, 254, 129 NE2d 341. We are not convinced that any inference as to skid marks could be reasonably made from the evidence in the record. However, it does not appear from our examination of the entire record that any injury resulted and that the error, if any, was harmless and does not require reversal. Both v. Nelson, 31 Ill2d 511, 514, 202 NE2d 494; Quigley v. Snoddy, 102 Ill App 2d 232, 236, 242 NE2d 775.

While we agree that the court has a special duty to see that the rights of minors are adequately protected, we find nothing in the record to support the plaintiff's final contention that he was denied a fair trial by the actions of the trial judge.

For the reasons stated, the judgment of the trial court will be affirmed.

Judgment affirmed.

MORAN, P. J. and DAVIS, J., concur.