PERCY P. GOLDSTEIN *et al.*, Plaintiffs-Appellees, *v.* THE HERTZ CORPORATION *et al.*, Defendants-Appellants.

(No. 56218;

First District (3rd Division)—November 29, 1973.

Tom L. Yates, of Chicago (Carl E. Abrahamson, of counsel), for appellants.

Fishman & Fishman, of Chicago (Ronald S. Fishman, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Percy P. Goldstein, both as administrator of the estate of his daughter, Esther B. Goldstein, and individually, brought this action against defendants in the circuit court of Cook County under the Wrongful Death Act for fatal injuries suffered by plaintiff's decedent, and individually for expenses incurred by him, arising out of a motor vehicle collision. Plaintiff, Ellen Sue Paul, also brought an action for personal injuries sustained in the same collision. A jury returned a verdict in favor of the father as administrator for $80,000; in favor of the father individually for $2,700; and in favor of Ellen Paul for $3,000. The trial court entered judgments on the verdicts in favor of the father individually and for Ellen Paul. However, the court entered a remittitur of

$50,000 on the verdict returned in favor of the administrator pursuant to the statutory limitation on wrongful death actions then in effect, and entered judgment in favor of the administrator for $30,000.

The collision occurred when a vehicle operated by Bene A. Tanenbaum and in which plaintiff's decedent and Ellen Paul were passengers, was struck by a vehicle owned by defendant, The Hertz Corporation, and operated by its agent and codefendant, C. B. Loveless. In a separate proceeding, Tanenbaum brought suit against both defendants for personal injuries sustained by her in the collision. In that case, a jury returned a verdict in favor of Tanenbaum for $14,000. The trial court, however, finding that Tanenbaum was guilty of contributory negligence as a matter of law, entered judgment notwithstanding the verdict in favor of defendants. Tanenbaum brought an appeal to this court. On this same date, we have filed our opinion in that case, ruling that the trial judge erred in finding that Tanenbaum was contributorily negligent as a matter of law. *Tanenbaum v. Loveless and The Hertz Corporation* (No. 57313, Nov. 1973), 16 Ill.App.3d 104.

In the instant case, defendants contend on appeal that the evidence of negligence on the part of Loveless and of due care on the part of Ellen Paul and plaintiff's decedent was insufficient to support the verdicts; that the closing argument of administrator's counsel was so prejudicial as to require a new trial; that the trial court erred in ordering the jury to disregard certain testimony; and that the damages awarded to the administrator and to Ellen Paul were excessive.

The plaintiff administrator has filed a cross-appeal contending that the trial court erred in entering a remittitur of $50,000 on the jury verdict in the wrongful death action. He maintains that the statutory limitation of $30,000 on such actions then in effect was unconstitutional.

The collision occurred on October 17, 1965, at about 9:00 P.M. at the intersection of State Street and Walton Place in the City of Chicago. Since the facts concerning the accident were given in some detail in the companion *Tanenbaum* opinion, in this opinion as regards the circumstances of the accident, we shall set forth only the testimony of two witnesses who did not testify in the Tanenbaum case.

Willie T. Scott, driver of a Checker Cab involved in the accident, testified that he was proceeding west on Walton, a one-way street, when he stopped at the stop sign at State Street. The Tanenbaum vehicle was to his right and was also stopped at the stop sign. At that intersection, State is a preferential throughway permitting two-way, north-south traffic. Scott noticed that the State Street traffic was stopped for a red light at Oak Street, a short block north of Walton. At this time Scott began to cross the intersection simultaneously with the Tanenbaum vehicle. When

his cab was halfway across the intersection, Scott first observed defendants' vehicle coming toward them. It was travelling at a "terrific speed." Defendants' vehicle struck the Tanenbaum vehicle, which in turn was thrown against Scott's cab.

Ellen Paul testified that she was a passenger in a convertible automobile driven by Bene Tanenbaum. She was riding in the center front seat. As they approached State she noticed a cab to their left. After their vehicle stopped at State, and as it crossed the intersection, Ellen Paul did not look to the right but looked straight ahead. Her next recollection was the impact; it occurred when they were nearly at the west curb of Walton. She did not see defendants' vehicle prior to the collision.

Defendants' first contention is that there was insufficient evidence to support the jury verdicts. They maintain that there was no evidence of defendant Loveless' negligence, nor of due care on the part of Tanenbaum's passengers, Ellen Paul and plaintiff's decedent.

As has been noted, we held in *Tanenbaum* that the trial court erred in allowing defendants' motion for judgment notwithstanding the verdict. In so holding, we found that the evidence was sufficient to pose a question for the jury as to the negligence of Loveless and the due care of Bene Tanenbaum, the operator of the vehicle. In that light, we shall consider defendants' argument that the evidence was insufficient to show due care on the part of Tanenbaum's passengers.

■■ When the due care of the driver of the passenger's vehicle is a question of fact for the jury, there is a fair inference that the passenger who does nothing is in the exercise of due care. (*Eggimann v. Wise* (1964), 56 Ill.App.2d 385, 206 N.E.2d 472; *Gillan v. Chicago, N.S. & M. Ry. Co.* (1954), 1 Ill.App.2d 466, 117 N.E.2d 833.) Generally, the passenger, having no control over the management of the vehicle, is only required to exercise such care as the exigencies of the situation require; unless the passenger sees an obvious danger which the driver might not see, there is no duty to warn. (*Smith v. Bishop* (1965), 32 Ill. 2d 380, 205 N.E.2d 461.) There is no rule of law prescribing any particular act to be done or omitted by a passenger, and the question of his due care is usually one for the jury. *Leonard v. Murphy* (1957), 13 Ill.App.2d 39, 140 N.E.2d 537. Also see *Siebens v. Konicek* (1969), 108 Ill.App.2d 300, 247 N.E.2d 453.

■■ In *Tanenbaum* we held that Bene Tanenbaum's actions, in stopping and looking in both directions several times while crossing the intersection, presented an issue of fact for the jury as to her due care. We therefore conclude that the question of the due care of her passengers, Ellen Paul and plaintiff's decedent, was properly presented to the triers of fact. We also believe that the jury's findings that Loveless

was negligent and that the passengers were in the exercise of due care were not contrary to the manifest weight of the evidence.

Defendants' second contention is that the closing argument of counsel for the administrator was so improper and prejudicial as to require reversal. In support of this argument, defendants cite nine remarks made by counsel during argument.

■■ Before considering the specific comments, we believe that several general observations are in order. In closing argument counsel is not limited to a repetition of witness' direct examination, but may present the evidence in a light most favorable to his case. (*Bruske v. Arnold* (1969), 44 Ill.2d 132, 254 N.E.2d 453.) Attorneys must be allowed in closing argument to make reasonable comments upon the evidence. (*Walls v. Jul* (1969), 118 Ill.App.2d 242, 254 N.E.2d 173.) The latitude of permissible remarks may be wider when these remarks are made in response to direct remarks of opposing counsel (*Perfect v. Kaley* (1970), 130 Ill.App.2d 61, 264 N.E.2d 430), and in urging conclusions counsel should be accorded broad latitude. *Tuskey v. Callos* (1969), 112 Ill.App. 2d 213, 250 N.E.2d 524.

■■ In the instant case the closing arguments on behalf of the plaintiffs and defendants were quite lengthy, comprising more than 79 pages of the record. Moreover, the general tone of the argument by all parties was highly combative and often far from detached reason. While we do not find all the cited remarks of counsel to be completely proper, neither can we say that they were so prejudicial as to require a new trial. Furthermore, the trial court cautioned the jury that remarks of counsel were not evidence, and the attorneys during argument stated that their comments were not evidence. With that in mind, we proceed to a brief discussion of the portions of plaintiff's counsel's argument cited by defendants as improper.

■■ Defendants first contend that plaintiff administrator's counsel, absent specific evidence to that effect, commented that defendant Loveless was 130 to 150 feet from the intersection when Tanenbaum pulled from the stop sign. In our view, the remark was fair argument based upon computations of speeds and distances present in the record.

Defendants next contend that plaintiff administrator's counsel remarked that the element of damages was really what the case was all about. The comment followed a long argument concerning liability, and was made in rebuttal to a statement by defendants' counsel that the lawsuit was brought because "somebody wants an awful lot of somebody else's money." In that posture we do not consider the remark prejudicial.

Thirdly, defendants contend that plaintiff's counsel commented that "the Court will tell you under these circumstances with respect to the

father, a substantial amount is to be awarded." One of the instructions given to the jury concerned the presumption under the wrongful death action that where a decedent leaves a parent the law recognizes a presumption that the parent has sustained some substantial pecuniary loss by reason of the death. (I.P.I. 31.01.06.) The comment was not completely accurate, but in view of the instruction given, we do not believe that it was prejudicial to defendants.

■■ Fourthly, defendants argue that plaintiff counsel's statement that the driver "really doesn't have an interest in the case * * * The defendant is the Hertz Corporation" was prejudicial. The comment, although improper, was made in rebuttal to defense counsel's comment that the defendant Loveless had only a meager Mississippi education. Additionally, the trial court sustained defendants' objection to the remark, and it was stricken.

Defendants next argue that counsel's comment that defense counsel may have influenced his witness' testimony was prejudicial. Again the comment was not proper, but it was made in response to an attack by defense counsel upon the integrity and motives of the plaintiffs and their attorneys. The remark was not prejudicial.

■■ Defendants further contend that plaintiff's counsel, absent specific evidence, stated that the Tanenbaum vehicle sustained damages in the amount of $8,000, and that the vehicle was damaged beyond repair. Considering the photographic exhibits introduced into evidence and the testimony adduced as to the extensive damage sustained, we do not believe that defendants could have been prejudiced by the remarks.

Defendants also argue that counsel's comment that some of defense counsel's statements were "cold and callous," and his subsequent thanking the jury for not considering defense counsel's "demeaning remarks" were prejudicial. These comments were made in reply to some heated remarks made by defense counsel during closing argument, and were not prejudicial to defendants.

Defendants next contend that plaintiff's counsel improperly commented that defendants' agents were on the street taking statements while a girl was dying in the hospital. Objection to the improper remark was sustained, thereby curing any possible prejudice.

■■ Finally defendants urge that plaintiff administrator's counsel's comment that the jury must determine "what the young lady's life is worth," and his urging the jury to consider "everything that girl possibly could have done for her father" was improper and prejudicial. The trial court sustained objections to the statements, and informed the jury to heed the court's instructions, not what the attorney said, thus curing any possible prejudice.

We conclude that defendants were not prejudiced by the closing arguments of plaintiff administrator's counsel. Although the closing arguments on behalf of all parties were protracted and heated, defendants have cited only a few comments as having been improper. As we have observed, some of the cited remarks constituted fair argument; some of the comments were made in rebuttal to vigorous statements made by defense counsel; and objections to several remarks made by plaintiff's counsel were sustained. In general, the argument made by plaintiff administrator's counsel was fair; certainly, it does not require reversal.

Defendants' third contention on appeal is that the trial court erred in instructing the jury to disregard a portion of the testimony of plaintiff's witness, Bette Herbert.

Bette Herbert testified for the plaintiff that she was standing on a sidewalk on Walton looking toward State on the evening in question. She observed the Tanenbaum vehicle and a cab proceed side by side west on Walton and come to a stop at State. The two vehicles pulled out from the stop sign together, moving slowly across the intersection. As the two vehicles crossed the intersection, Mrs. Herbert observed defendants' vehicle, travelling "very rapidly," strike the Tanenbaum vehicle driving it into the cab.

While being cross-examined regarding the Checker cab involved in the accident, Mrs. Herbert testified that she was not sure what kind of cab was involved, but that she definitely had seen a cab. After acknowledging that she had given a statement to an agent of the defendant Hertz, she was asked if she had been asked and had answered the following during that statement:

"QUESTION: And do you know how the Checker cab became involved in the accident?

ANSWER: I didn't even know there was a Checker Cab involved, but I'm not surprised, because it was just terrific."

Despite objection by plaintiffs' attorneys that the foregoing was not impeaching to her testimony, she was permitted to answer and stated, "I don't recall." Subsequently in her testimony Mrs. Herbert stated that she did recall the following question and answer:

"QUESTION: You didn't see the cab in the accident then?

ANSWER: That may have been. I came home. I was so upset. I was standing out and went down there and I just couldn't take it, but I knew it was after quarter past eleven before everything was cleared away."

That testimony by the witness occurred in a portion of the trial often interspersed with heated argument by counsel that widely separated questions and the answers of the witness.

At the close of all the evidence that attorneys for plaintiffs requested the judge to instruct the jury to disregard the references to the statement elicited by defense counsel on the grounds that they were not impeaching of her other testimony and that when not recalled they were not proved by extrinsic evidence. The court instructed the jury that it should disregard all references in Mrs. Herbert's testimony to the previous statement which she had given the Hertz representative.

Defendants now argue that the court's instruction to disregard that portion of Mrs. Herbert's testimony in which she recalled previously answering the question "you didn't see the cab in the accident then?" constituted prejudicial error. We cannot agree.

■■ A witness may be impeached by prior inconsistent statements, whether directly or indirectly contrary to present testimony. (*Spenner v. Jenkins Party Liquors, Inc.* (1969), 111 Ill.App.2d 116, 248 N.E.2d 753.) However, the inconsistencies must be great enough that material facts are actually contravened. (*Esderts v. Chicago, Rock Island & Pacific R.R. Co.* (1966), 76 Ill.App.2d 210, 222 N.E.2d 117; *Redding v. Schroeder* (1964), 54 Ill.App.2d 306, 203 N.E.2d 616.) And once the foundation for impeachment by prior inconsistent statements has been laid, either by the witness's denial of or failure to recall making such prior statements, it is incumbent upon counsel having laid such foundation to offer proof of the alleged impeaching statements. (*Schoolfield v. Witkowski* (1964), 54 Ill.App.2d 111, 203 N.E.2d 460.) Extrinsic evidence, of course, is not required where the witness unequivocally admits having made the prior statement. *Logue v. Williams* (1969), 111 Ill.App.2d 327, 250 N.E.2d 159.

■■ In the instant case no extrinsic evidence of alleged prior impeaching statements was offered although only on one occasion did the witness testify that she recalled a certain question and answer. In the instances she did not recall the cited question and answer, the trial court's direction to the jury to disregard the testimony was clearly proper. In the single instance set forth by the defendants in which the witness did recall the question and answer, both were so confusing that it is difficult to discern whether the prior statement was contradictory to her trial testimony. We therefore find no abuse of discretion on the part of the trial court in directing the jury to disregard this highly confusing and at best marginally probative aspect of Mrs. Herbert's testimony. In any event, its exclusion did not constitute prejudicial error.

Defendant's final contention is that the judgment of $30,000 in favor of the plaintiff administrator in the wrongful death action and the judgment of $3,000 in favor of Ellen Paul for personal injuries are grossly

excessive. They maintain that the evidence was insufficient to justify awards in those amounts.

Percy P. Goldstein, the father of Esther Goldstein, testified that his daughter was 20 years old at the time of her death. She was attending the University of Illinois and had been an excellent student. During her vacations she was an office employee and earned about $70 per week. She had a half brother two and a half years of age, and her relationship to her family was extremely close. She was very helpful in the home.

Mrs. Leonard Paul, mother of the plaintiff Ellen Paul, testified that prior to the time of the accident plaintiff's health had been generally good. Immediately following the accident, plaintiff was taken to Wesley Memorial Hospital, but on the same day the witness took plaintiff to the Sheridan Pavilion Hospital where she remained for nine days. As a result of the accident plaintiff was badly bruised over a large portion of her body. Plaintiff also developed a severe mental depression, and did not return to school for several weeks.

Ellen Paul testified that although she did not suffer cuts or fractures she was severely bruised and suffered continuing pain in her back. She did not have a cold at the time of the accident. She had difficulty walking and considerable discomfort during her hospitalization and afterwards. Her back pain persisted. The Wesley Hospital bill was $75.00.

Doctor Leonard C. Arnold treated plaintiff Ellen Paul at the Sheridan Pavilion Hospital and afterward. She sustained a concussion, bruises of the right hip and lower tail bone, chest, left knee, right shoulder, lower back, and a pneumonitis or a localized infection of the lung. The lung infection could have been brought on by the accident. Doctor Arnold also testified that plaintiff's subsequent emotional depression could have been related to the accident. Plaintiff was released from the hospital on October 26, 1965; the doctor saw her several times thereafter, the last time on November 9. Doctor Arnold's bill was $125.00. The Sheridan Pavilion Hospital bill was $555.70.

Fixing the amount of damages is primarily the function of the triers of fact, and the amount so fixed will not be disturbed on review unless it is obviously the result of passion and prejudice. *Maca v. Rock Island-Moline City Lines, Inc.* (1964), 47 Ill.App.2d 31, 197 N.E.2d 463.

■■ In the instant case, with reference to the wrongful death action, there was evidence that plaintiff's decedent was an excellent student, that she had summer employment earning about $70 per week, and that her relationship with her family was extremely close and cooperative. In *Jung v. Buelens* (1966), 77 Ill.App.2d 391, 222 N.E.2d 707, an 18 year old decedent in a wrongful death action had been an average high school student, was earning $50 per week as a beautician, and was helpful

toward her family. This court, after noting that parents as lineal next of kin were entitled to a presumption of pecuniary loss, refused to find damages of $30,000 to be excessive. In the present case, we cannot find the judgment for $30,000 to be excessive.

■■ We also hold that there was ample evidence to support the judgment for $3,000 in favor of Ellen Paul. She was hospitalized for nine days and had out-of-pocket expenses of at least $755.00. She suffered a concussion, multiple bruises, and had back pains which persisted up to the time of trial. Under such circumstances we will not interfere with the judgment.

Plaintiff administrator has filed a cross-appeal, arguing that even though the wrongful death statutory limitation in effect at the time of Esther Goldstein's death may have been constitutional under the Illinois Constitution of 1870, it was void under the 1970 Constitution which was applicable at the time of trial. The statutory limit of recovery at the time of the death of plaintiff's decedent on October 19, 1965, was $30,000. There was no limitation in those cases where death occurred after August 18, 1967. Plaintiff contends that the mandatory obligation in the new constitution providing that every person shall find a remedy for all injuries prohibits any statutory limitation for fatal injuries. He therefore argues that the trial court erred in entering a remittitur on the verdict.

■■ We find no merit in the plaintiff administrator's contention. While the Constitution provides that every person shall find a remedy for all injuries received, the power and adequacy of the available remedy rests with the Legislature. (*Hall v. Gillins* (1958), 13 Ill.2d 26, 147 N.E.2d 352; *Butler v. Chicago Transit Authority* (1967), 38 Ill.2d 361, 231 N.E.2d 429.) The maximum recovery in the present case was $30,000, and the trial court did not err in entering a remittitur.

Accordingly, the cross-appeal is denied, and the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

McGLOON and MEJDA, JJ., concur.