**Rose C. Schmidt, Plaintiff-Appellee, v. Cenacle Convent, Defendant-Appellant.**

**Gen. No. 66–152.**

Second District.

August 9, 1967.

Rehearing denied September 15, 1967.

John W. Gilligan, of Glen Ellyn, for appellant.

James D. Murphy, of Chicago, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

The jury awarded Rose Schmidt damages in the sum of $6,600 against the Cenacle Convent for injuries she sustained in a fall at the convent. The defendant appeals from a judgment entered on the verdict, alleging that the trial court erred in refusing to grant its motion for a directed verdict and judgment notwithstanding the verdict.

On May 1, 1963, a Wednesday, the convent was holding a "day of recollection." Such days were normally held in the middle of the week, and lunch was served in the dining room. The dining room also was used on the weekends for retreats. One of the Sisters called the plaintiff to ask her to help with the serving of the noon meal, which was customary. The plaintiff volunteered her services and was not paid; however, some of those who helped were paid.

The plaintiff was very familiar with the premises since she had been going to the convent regularly since it opened in 1939 and had worked as a server at meals on many prior occasions. On the day in question, she arrived at the convent at about 10:00 a. m. She went to the dining room at about 10:30 a. m. and proceeded to prepare the bread and butter plates and relish trays. At noon she went to the dining room where she, and the others who were helping with the main meal, were served

lunch by one of the Sisters. After the meal the dishes were cleared, and the plaintiff proceeded to fill the water glasses at the tables for the group that was to be there for lunch. She carried a pitcher of water from table to table, filling the glasses, and it was while she was filling the glasses that she slipped and fell.

She stated that all at once she felt herself going; she fell to the floor with water from the pitcher falling over her; that as she fell it felt as it would if you slipped on ice; and that she didn't know whether or not any foreign substance was on her heel.

As to the condition of the floor, the plaintiff's testimony was much the same as the testimony of those from the convent. It was a hardwood floor and was well-polished or waxed in that it had a glossy appearance. The day in question was a Wednesday and it was customary to polish the floor on Monday or Tuesday after a weekend retreat. In the words of the plaintiff, the floor on the day in question, "didn't look very much different than the floor at any other time when I had been over there because the floor was always kept in perfect condition." Asked why she fell, the plaintiff answered, "Well, it was a smooth floor, it was a wood floor varnished and highly waxed," but she testified that she did not know what caused her to fall. Elsewhere she again testified that the floor on the day in question did not look any different than it did on other days when she had been there. It was clean and there did not seem to be anything on the floor when she was walking, nor did she regard the floor as slippery.

At the time in question, the plaintiff was 69 years old, active, was in good health and she was wearing orthopedic shoes with a rubber heel. As a result of the fall she broke her hip.

■ The defendant contends that the trial court should have directed a verdict or entered judgment non obstante veredicto. The Supreme Court has recently set forth the

test by which we must determine such a contention. After noting that some uncertainty previously existed in this State as to the rule applicable to testing whether a verdict should have been directed or a judgment n. o. v. entered, and after an exhaustive review of the case law, the Supreme Court concluded that a judgment ought to be directed and a judgment n. o. v. entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 229 NE2d 504 (1967).

██ The complaint charges that the defendant was negligent in causing or permitting (1) the dining room floor to be wet with water, (2) the dining room floor to be covered with a slippery fluid, (3) the dining room floor to be highly polished and slippery and unsafe for walking thereon, and (4) the pantry to have greasy or slippery food particles or foreign substances remaining on the pantry floor and the same became affixed to the plaintiff's shoe. Allegations (1), (2) and (4) above appear to charge that defendant permitted foreign substances to be on the floor. Many foreign substance cases state that the owner of a building owes a business invitee the duty of exercising ordinary care in maintaining the premises in a reasonably safe condition. Donoho v. O'Connell's, Inc., 13 Ill 2d 113, 118, 148 NE2d 434 (1958); Garrett v. National Tea Co., 12 Ill2d 567, 573, 147 NE2d 367 (1958); Johnson v. Central Tile & Terrazzo Co., 59 Ill App2d 262, 274, 207 NE2d 160 (1965). As was stated in the Donoho case, supra, at page 118:

". . . Liability will be imposed where a business invitee is injured by slipping on a foreign substance on the premises if it was placed there by the negligence of the proprietor or his servants, or, if there is no showing how the substance got on the premises, if it appears that the proprietor or his servant knew

154

of its presence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered."

The defendant does not challenge the status of plaintiff as an invitee for purpose of this appeal. Hence, it owed to the plaintiff the duty of exercising ordinary care to maintain the premises in a reasonably safe condition.

█ Plaintiff's difficulty is that there is absolutely no evidence of any foreign substance being on the floor. There is evidence that one of the Sisters cleared the table after those who were about to serve the luncheon had eaten. There was no evidence, however, that she had dropped or spilled anything on the floor. The fact that the Sister had walked over the floor carrying dirty dishes and that the plaintiff later fell on this floor does not justify the presumption, either by us or by the jury, that the Sister had dropped something on the floor. If there is any reasonable inference that might be drawn from the evidentiary facts, it is that the plaintiff, herself, may have spilled some water as she was filling the glasses on the table. This, of course, would be of no help to plaintiff's cause. It would indicate only her guilt of contributory negligence and that her injury was not the result of a breach of any duty owed by the defendant. Mick v. Kroger Co., 37 Ill2d 148, 150, 151, 224 NE2d 859 (1967).

█ As to the allegation regarding the highly polished and slippery condition of the floor, the case of Dixon v. Hart, 344 Ill App 432, 436, 437, 101 NE2d 282 (1951) and the many cases thereafter make clear that merely waxing or polishing a floor is not negligence in and of itself. Some positive act of negligence must be shown such as using an excessive quantity of wax, or applying it unevenly, or freshly polishing a floor without warning to others, or treating a part of a floor and leaving part untreated, or polishing a floor where people would step on it unexpectedly. Dixon v. Hart, supra, at 435. The waxing

of floors is too common and accepted a practice to give rise to liability. It must be shown that the owner of the premises was negligent either in the materials he used or in the manner in which he applied the materials. Rarus v. J. C. Penney Co., 39 Ill App2d 42, 46, 187 NE2d 529 (1963).

Both the Dixon and Rarus cases further illustrate that testimony that a floor was "slippery," "slick," "polished" or "shiny" is not sufficient alone to require that the owner's liability be weighed by a jury. Dixon, supra at 437; Rarus, supra at 48. The best that can be said of the evidence, viewed most favorably for the plaintiff, is that the floor was well-polished. The floor was always well-polished and kept in a good condition. Plaintiff acknowledged that she knew this, that she was very familiar with the premises and that the floor appeared much the same as on other days she had been there. We fail to see how this can be the basis of liability. See Mack v. Woman's Club of Aurora, 303 Ill App 217, 220, 24 NE2d 898 (1940).

It would serve no purpose to further elaborate on the evidence. Applying the standard set forth by the Supreme Court in the Pedrick case, supra, we believe that the evidence is such that any verdict other than for the defendant could not possibly stand.

The plaintiff has raised the additional argument that defendant's appeal was not timely. The jury returned its verdict late Thursday, June 30, 1966. On July 1, 1966, plaintiff's counsel mailed to the judge a judgment order, requesting that it be entered. The July Fourth weekend intervened and the judge entered the judgment order on July 6, 1966. The defendant, it appears, ascertained this date from the clerk and filed its post-trial motion within thirty days thereafter. Judgment also had been entered on the verdict previously, without a written

order, on June 30, 1966. Defendant's post-trial motion was not within thirty days of the June 30 date.

We are confident that the "second" judgment was not prepared and entered under a calculation to mislead the defendant. However, it had that effect. The Committee Comments to present Supreme Court Rule 272 indicate that prior to its adoption the question of the date when a judgment was entered was not always without doubt. The written judgment order was "entered" in this case at the request of the plaintiff. The letter forwarding the judgment draft to the judge, a copy of which went to defendant's counsel, requested the entry of the judgment. The entry thereafter on July 6, led both defendant's counsel and the clerk to accept that as the effective date.

Under these facts we believe we would be totally unwarranted in holding that the defendant may not prosecute this appeal. Without impugning the motives of anyone, we hold that the plaintiff must be estopped to assert any date other than July 6, 1966, as the effective date of the judgment.

For the reasons set forth herein, the judgment of the trial court is reversed and judgment entered herein for the defendant.

Reversed—judgment for defendant.

ABRAHAMSON and DAVIS, JJ., concur.