ESTELLE JOHNSON, Plaintiff-Appellee, *v.* THE CHICAGO TRANSIT AUTHORITY
*et al.,* Defendants-Appellants.

(No. 55625;

First District (3rd Division)—March 22, 1973.

James G. O'Donohue, Jerome F. Dixon, and William J. Callahan, all of Chicago, for appellants.

Albert F. Hofeld and William J. Harte, both of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiff, Estelle Johnson, brought an action against the Chicago Transit Authority and its bus driver, Marinus Cooper, for personal injuries she sustained while riding as a passenger on a C.T.A. bus driven by the individual defendant. The jury returned a verdict of $32,385 for the plaintiff, and judgment was entered thereon. The trial court denied the defendants' post-trial motion, and this appeal followed.

The defendants raise two issues. They contend (1) that plaintiff's attorney made improper and prejudicial remarks during his closing argument to the jury, and (2) that the plaintiff misused the rules of discovery and thereby prejudiced the defendants.

We affirm.

The defendants urge us to consider their first contention in light of their assertion that the issue of liability was close in this case and that, therefore, the record should be error-free in order to sustain the judgment. After carefully reviewing the record, we find that we do not agree with the defendants' position.

The C.T.A. bus driver, Marinus Cooper, testified that he was driving his bus southbound on Western Avenue in Chicago in the lane closest to the curb on the morning of May 12, 1964. When he was about 8300 South on Western Avenue the bus scraped against some tree branches which were extending over the street, and two windows of the bus were broken. As a result of this accident, Estelle Johnson, a passanger, claimed that she sustained back and neck injuries when the bus jolted while she was sitting in her seat. The driver did not stop the bus until he got to the next scheduled stop.

Cooper testified that he saw the tree about 100 to 200 feet away before he scraped against it and that at the time of the accident he was going

between 20 and 30 miles per hour. He explained that he was unable to avoid hitting the branches and that due to another bus on his left, he could not move his bus out of the curb lane. He also testified that on two earlier runs along Western Avenue that morning he had observed a tree hanging over a neighboring fence at the spot where the accident subsequently took place. That having been substantially the evidence relating to the issue of liability, the jury decided the issue in favor of the plaintiff.

The defendants complain of six instances of improper and prejudicial remarks that the plaintiff's attorney made during his closing argument to the jury. All the remarks except one pertained to damages. We shall consider each of the six instances separately.

■■ In the first instance the defendants argue that there was an improper formalization of pain and suffering damages which the Illinois Supreme Court had condemned in *Caley v. Manicke* (1962), 24 Ill.2d 390, 182 N.E.2d 206. In his argument to the jury, plaintiff's attorney said: "Ladies and gentlemen, I don't know what the element of pain and suffering is worth. That's absolutely for you to determine. $30,000 a year? $20,000 a year? $16,000? I don't know. There are 31 years involved. If you figure that element is worth $650 it comes to $20,000." The trial court overruled defendants' objection to the above arguments.

The court in *Caley* disapproved of a "per diem" argument in which a monetary value for pain and suffering is given to a small unit of time such as a minute or an hour and then an aggregate is arrived at by way of multiplication. The court said that this method produced an "illusion of certainty" to the jury. We believe the argument of counsel in the instant case did not go as far as the argument in *Caley*.

In two decisions, *Fortner v. McDermott* (1971), 1 Ill.App.3d 358, 272 N.E.2d 503, and *Warp v. Whitmore* (1970), 123 Ill.App.2d 157, 260 N.E.2d 45, the court found no reversible error because of an argument of counsel that suggested a monetary value for pain and suffering per year for the number of years of the life expectancy of the plaintiff. Counsel in both cases were careful to avoid giving any illusion of certainty and admonished the jury that their figures were merely suggestions. In the instant case, in addition to counsel's similar admonitions, his argument concerning damages for pain and suffering was merely a part of his entire argument for damages, and we do not think that counsel gave undue emphasis to his remarks.

In the second instance, defendants complain of two statements which they argue were not based on the evidence and were outside the bounds of proper argument. In referring to the expert medical testimony that was presented during trial, plaintiff's counsel remarked: "They have all testified that the only thing that can be done is surgery, if it gets to the

point where it is needed." The court overruled the defendants' objection. Defendants maintain that none of the doctors so testified.

■■ Attorneys have broad latitude during closing argument to draw reasonable inferences and conclusions from the evidence. (*Maddox v. Smith* (1966), 67 Ill.App.2d 374, 214 N.E.2d 5.) In the instant case plaintiff's counsel did not exceed the bounds of proper argument. The three expert medical witnesses who testified for the plaintiff indicated that she had a serious back injury that involved a disc. According to the doctors' opinions, plaintiff was suffering from the possibility of a slipped disc (Dr. Foltz), a herniated disc (Dr. Hirshtick), and a flattened disc pinching a nerve (Dr. Zeitlin). Only two of the expert witnesses, Dr. Hirshtick and Dr. Miller, defendants' expert, referred to the need for surgery when a ruptured disc is causing considerable discomfort to a patient due to a complicating nerve injury.

The remark complained of was not so improper as to constitute reversible error. Given the conditional nature of the statement, it is hard to conceive of resulting prejudice. The jury knew that six years had passed from the time of the accident until trial, and plaintiff had not undergone surgery. In fact, one doctor commented that the x-rays indicated that her condition had stabilized.

■■■ Defendants further complain that another remark misrepresented the evidence in the case. In referring to plaintiff's condition, plaintiff's counsel said: "I don't think she is going to be able to work too much longer with respect to the increasing difficulty she is having with the hand and arm." The court sustained defendants' objection. The defendants requested no further action or ruling from the trial court. A reviewing court may set aside a verdict although objections have been sustained to improper remarks of counsel if such remarks were prejudicial. (*Clark v. Rowatt* (1953), 349 Ill.App. 396, 110 N.E.2d 663.) The remark in this instance does not warrant such action.

■■■ In the third instance, plaintiff's counsel commented on the testimony of Mrs. Barnhouse. Defense counsel interrupted and said: "Excuse me, is that Mrs. Barnhouse's testimony?" Plaintiff's counsel replied: "Yes, sir. I will read it all if you like." Defense counsel said: "No," and made no further objection. Defendants complain that counsel's response to the question was improper and prejudicial. Defendants argue that because it is improper for an attorney to read an unproven transcript to a jury, it is also improper for an attorney to challenge his opponent to permit him to read an unproven transcript to a jury. We shall consider defendants' failure to object as a waiver of the objection. We may consider the alleged error in the absence of objection if it is of such a character as to

amount to a denial of a fair trial. The remark was not so prejudicial in this instance. *McElroy v. Force* (1967), 38 Ill.2d 528, 232 N.E.2d 708.

■■ In the fourth instance, plaintiff's counsel referred to the plaintiff's testimony as follows:

> "She testified to her lost earnings, and she was about $1500 short. How do you explain that, Mr. Callahan?
>
> Mr. Callahan: Your honor, he asked me a question. I would like to have the right to answer.
>
> The court: Overruled."

The defendants contend that because this was part of plaintiff's rebuttal argument and defense counsel would not have an opportunity to reply, his inability to reply would lead the jury to believe that he had no answer. Under the circumstances, counsel's question was not improper argument. It was one in a series of rhetorical questions that counsel made in response to defense counsel's argument. Defense counsel had argued that plaintiff had magnified the severity of her injuries at trial. By pointing out that plaintiff had actually underestimated a portion of her damages, counsel's question was an invited response to the previous argument. (*Andrews v. C.T.A.* (1949), 337 Ill.App. 656, 86 N.E.2d 283.) Defense counsel made sure that his inability to reply to the rebuttal argument would not mislead the jury by pointing out to them in his closing argument that trial procedure would not allow him to reply to opposing counsel's remarks.

In the fifth instance plaintiff's counsel commented on defendants' tactics in calling Dr. Miller, a medical expert, to testify:

> "We are charged with [sic] every move she makes is in preparation for trial, but they do nothing in preparation for trial, or did they have a doctor who was going to come in and they didn't like his testimony, so they got Dr. Miller? I don't know."

The court sustained defendants' objection and instructed the jury to disregard the remark.

■■ Although counsel's remarks were improper, the court took proper measures to guard against any prejudicial effect on the jury. Under these circumstances, we find no reversible error. *Taylor v. Carborundum* (1969), 107 Ill.App.2d 12, 246 N.E.2d 898.

■■ In the sixth and final instance, counsel commented on the testimony of one of plaintiff's witnesses, Martha Wagner, who was riding on the bus at the time of the accident. He stated: "She knows that at about 9500 South Western there is a major limb which overhangs Western Avenue. It's been there a long time." Defense counsel objected on the grounds that there was no testimony to that effect and the court sustained

the objection. Defendants' attorney and plaintiff's attorney then argued the point between themselves until the judge stated, "The jury heard the testimony."

Defendants complain that counsel misstated the evidence and persisted in voicing his belief in the propriety of the remark even after the court had sustained the objection. Defendants further argue that the final statement of the court lessened the effect of sustaining the objection.

Mrs. Wagner testified that on her way home from work on the day of the accident she noticed that "a big limb," which was "quite thick," had broken off the tree in the area where the accident occurred. The comment of counsel was a minor departure from Mrs. Wagner's testimony. The evidence was conflicting as to whether the bus scraped against a part of a tree which was uprooted or not uprooted. One theory of the facts supports the inference drawn from Mrs. Wagner's testimony. The court's comment indicated to the jury that it was their function to determine the facts in the case and placed the remarks of plaintiff's attorney in the proper perspective. *Congiardo v. Bordenaro* (1969), 106 Ill.App.2d 374, 245 N.E.2d 884.

Having decided that none of these instances of error warrants reversal, we find no merit in defendants' contention that when cumulated these errors warrant reversal. The court acted properly in those instances in which it sustained defendants' objections, and any further action which the court took was effective in protecting the rights of the parties. In the instructions the court told the jury to disregard the statements of counsel which had no basis in the evidence. Those remarks which the court disapproved were not so prejudicial so as to require action beyond that which the court had taken at trial. *Ziegler v. Smith* (1967), 86 Ill. App.2d 215, 229 N.E.2d 340.

In their second contention, defendants argue that the plaintiff misused the discovery process to their detriment and that, therefore, they entitled to a new trial. Specifically, they claim they were surprised by the testimony at trial of two of plaintiff's expert medical witnesses, Dr. Foltz and Dr. Hirshtick. They received a medical report of Dr. Foltz dated August 6, 1968, pursuant to a reciprocal order for production entered October 24, 1968. This report noted "no evidence of bone destruction" in plaintiff's condition. At trial, Dr. Foltz testified to the possibility that plaintiff had sustained a slipped disc. Defendants claim they were surprised by this testimony. They also claim they were surprised by the testimony of Dr. Hirshtick whose medical report they received on the eve of trial. Dr. Hirshtick testified that plaintiff had sustained a ruptured disc.

At the conference on instructions near the end of the trial, defense

counsel asked for a mistrial on the grounds that plaintiff did not comply with a second reciprocal order for production of May 22, 1970, that plaintiff did not produce the report of Dr. Hirshtick until the eve of trial, and that defendants were surprised thereby. The court denied the motion for mistrial.

■■ Upon a closer examination of the circumstances surrounding the pretrial discovery, it becomes apparent that defendants were surprised because of their lack of preparation and not because of plaintiff's bad faith. Aside from obtaining the report of Dr. Foltz dated August 6, 1968, defendants did not take any steps until the eve of trial on June 17, 1970, to inquire more fully into the nature of plaintiff's injuries. On plaintiff's motion, the court entered its order of May 22, 1970, requiring that the parties produce, *inter alia*, all data pertaining to the mental and physical condition of the plaintiff before and after the accident. The exchange of information was to take place within five days after entry of the order at the offices of the plaintiff's attorney. Defendants did not comply with the order, nor did they seek to compel the plaintiff to comply. On the eve of trial plaintiff's attorney told defendants' attorney that he was ready to give him a list of expert witnesses and the report of Dr. Hirshtick. Defendants' attorney replied that the next day would be soon enough to receive the report.

Defendants argue that plaintiff lulled them into believing that plaintiff's injuries were not serious. They point to a conversation which took place on the eve of trial in the judge's chambers between the two opposing counsel. Plaintiff's attorney had increased his settlement demand from $5000 to $25,000. At this point there is a disagreement as to what transpired. At the hearing on the defendants' post-trial motion for new trial, defendants' attorney testified that when questioned about the reasons for the increase, plaintiff's attorney said there was no change in the plaintiff's condition. Plaintiff's attorney testified that defense counsel asked him if there were any changes in the case to which he replied there was none. Both counsel testified under oath.

It was inappropriate for the defendants to rely on the report of August 6, 1968, and the conversation in judge's chambers to support their conclusions that the plaintiff's injuries were not serious and that they did not involve a disc disablement. The surprise and prejudice of which the defendants complain was due to their failure to inquire more fully into the nature of the injuries by way of the various means available to them for discovery. There is no indication that the plaintiff wilfully concealed any information from the defendants. In this situation we will not grant defendants a new trial. *Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App.2d 283, 216 N.E.2d 14.

24

For the above reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and McNAMARA, J., concur.