SOPHIA FINTAK *et al.*, Plaintiffs-Appellees, *v.* CATHOLIC BISHOP OF CHICAGO, Defendant-Appellant.

First District (5th Division)   No. 63226

Opinion filed July 22, 1977.

O'Brien, Redding & Hyde, of Chicago (Donald J. O'Brien, Jr., Richard M. O'Brien, Dom J. Rizzi, and Michael W. Rathsack, of counsel), for appellant.

McCarthy, Scheurich, Duffy & Neidhart, of Chicago (Stephen A. Snakard and John M. Duffy, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant, a corporation sole, appeals from judgments of $9,000 in favor of plaintiff Sophia Fintak (plaintiff) for her personal injuries and of $9,000 in favor of plaintiff Victor Fintak, Sophia's husband, for loss of consortium. It contends the trial court erred (1) by applying a duty of ordinary care to defendant, (2) by adjudging defendant to be negligent and plaintiff to be free from contributory negligence, and (3) by allowing plaintiff's counsel to improperly argue to the jury. In addition, it contends that if the judgment in plaintiff's favor is reversed, then the judgment in favor of plaintiff Victor Fintak must be similarly reversed because although it was a separate cause of action, it was dependent on defendant's liability to plaintiff.

The following pertinent evidence was adduced at trial.

*For plaintiffs*
 *Plaintiff Sophia Fintak*
Sunday, December 21, 1969, was a wet, gloomy day with occasional snow flurries. She left her home at approximately 9:30 a.m. with her

husband Victor to attend the 9:45 a.m. mass at Saint Priscilla's Church. She walked on wet pavement from her home to the car and was not wearing galoshes. She rode to the church and arrived at 9:35 a.m. She exited the vehicle under a canopy on the western side of the church, walked into the church vestibule, and proceeded at a normal pace to the center aisle at the rear of the church. She did not recall seeing a mat at the front entrance to the church; however, she later admitted previously stating that she had seen a mat. Neither the vestibule nor the center aisle was carpeted.

She was looking towards the altar as she proceeded up the aisle. She was not looking at the floor. There was another woman in front of her and to her right. When this other woman genuflected, plaintiff was at her side and not behind her. After she had passed four or five pews from the rear of the church, she slipped and fell on her left side. She did not trip over her own feet. Although the floor felt slippery, she did not see what she slipped on. As she hit the floor she heard a crack and felt an excruciating pain in her left side. Her husband and the ushers carried her to the vestibule and an ambulance drove her to Northwest Hospital.

She received several shots to relieve the pain at the hospital and was operated upon for a broken hip on the following day. She experienced numbness and pain in her leg, a sore back, and difficulty sleeping. She was hospitalized for six weeks.

She slept on a sofa in the lower level of her home for four months after she returned home. Victor brought a bed pan to her sofa, bathed her, and did the shopping and household duties during this period. She crawled up stairs and eventually was able to walk with the assistance of a walker and, later, a cane.

When the pain continued, she underwent a second operation on January 27, 1971. Although she is no longer in pain, she experiences a drawing sensation and has two hollow spots on her leg. A radiologist told her the fracture has healed completely. She has seen a doctor twice since March of 1971. She identified several hospital, doctor and medication bills related to her injuries.

On December 21, 1969, she was approximately 66 years old and was in good health.

*John Joyce*

He was Saint Priscilla's maintenance man in December 1969. The church floor had been mopped and a nonslippery sealer applied for the Christmas season. The aisles were also cleaned and waxed. A janitor's closet containing mops was located in the church vestibule. He never observed an usher mop the aisles in the church. However, after the witness was declared a hostile witness by the court based upon a prior

inconsistent statement, defendant stipulated that Joyce previously stated the ushers mopped on wet, sloppy days. He stated that the floor wax was not slippery, but admitted previously describing it as "that slippery stuff."

On defendant's behalf, he identified a picture of a rubber mat and two strips of carpeting and stated they were both in the church vestibule on December 21, 1969.

*William Balog*

He was the usher in the center aisle at that mass. People brought water into the church on their shoes and their umbrellas. The church's aisles were wet. The center aisle was wet in spots extending halfway from the rear to the front of the church.

He knew where the mops were kept and had seen other ushers use them on prior occasions. He did not see any usher mop that morning. He did not mop because he felt it was a housekeeper's job.

As plaintiff was walking up the aisle, a woman genuflected in front of her and plaintiff tried to avoid a collision. Plaintiff's legs crossed, made contact, and she fell on her left side. Although her feet crossed, he did not see them hook together before she fell. He did not see any water in the area where she fell.

*Wayne Pawlak*

He ushered on the east side of the church at that mass. He saw plaintiff being carried from the church, but did not know exactly where she fell. The vestibule area was a little wet. Although he had seen other ushers mop on prior occasions, he did not see anyone mop on that day.

*George Dittrich*

He was a head usher at the mass. The ushers had nothing to do with church maintenance; however, all ushers were familiar with the storeroom where the mops were kept. The ushers had been instructed to mop the floors when wet. He did not mop the floors on that morning.

*Anthony John Salerno*

He was ushering in the center aisle of the church and was standing near the front of the church when plaintiff fell. She did not stumble or trip. He did not mop or see anyone else mop that morning. He did not remember looking for or seeing any water in the aisle.

*Reverend Aloysius J. Hinterberger under section 60*

He is a Roman Catholic priest and has been the pastor at Saint Priscilla's Church since May 1968. The captain of the ushers and the other ushers knew where the mops were kept and that they were required to use them whenever necessary. When he visited plaintiff at the hospital that afternoon she was in pain and under sedation.

*Thomas William Fitzpatrick*

He operated a janitorial supply service in 1969. In August 1969 there were eight pieces of unmatched carpeting in the church vestibule. In

February 1970 he sold and installed two long pieces of rubber backed carpeting, side by side, in the church vestibule.

*Plaintiff Victor Fintak*

He corroborated his wife's account of their drive to the church. After he had parked the car and as he was walking down the center aisle he saw his wife lying on the floor and a small crowd gathered around her. Over defendant's objection, he stated his wife said she had slipped and was hurt. He did not notice any puddles in the center aisle.

He visited her daily after her first operation. He did the shopping and cooking for her during this period. He remained home from work during the three or four months following her release. Since her second operation in January 1971, she cannot garden, nor are they able to dance. He now does the mopping and vacuuming for her. The total amount paid for plaintiff's doctor, hospital and medical bills was $4,329.84.

*For defendant*

*Charles Corbett*

He was the head usher at the 9:45 a.m. mass at Saint Priscilla's Church on December 21, 1969. He noticed that the center aisle was wet. At about 9:35 a.m. he noticed some moisture in the center aisle and immediately mopped the area. He did not see plaintiff fall. He saw plaintiff in the vestibule after the accident, but did not notice the condition of the center aisle after the fall. The other ushers did not mop that morning although they all knew where the mops were kept.

During closing argument, plaintiff's counsel argued, *inter alia*:

"How would you like to have a headache every day for a year and a half almost; constantly for a year and a half a headache or a toothache? It gets a little tiresome after awhile to endure this kind of pain for a year and a half, going to doctors, having to be operated on, experiencing this excruciating pain. How much would you take? How can you compensate a person?

Mr. O'Brien: I would object to asking the jurors how much they would take.

The Court: Objection sustained.

Mr. Snakard: How much would a reasonable person take for something like that?

Mr. O'Brien: Objection.

The Court: Objection sustained.

Mr. Snakard: Would a person experience that type of pain for a hundred dollars a day?

Mr. O'Brien: That I would object to.

The Court: Objection sustained. Your time is about up, Mr. Snakard.

Mr. Snakard: Ladies and gentlemen, we're suggesting a figure to you of $10 a day."

Following a hearing on defendant's subsequent objection, the trial court immediately stated:

"The objection is sustained with reference to arguments of so much a day or what the jury would take if they were in Mrs. Fintak's place."

OPINION

Defendant contends the trial court erred by applying a duty of ordinary care to it rather than a lesser standard of care which would only require that it refrain from acts of wilful and wanton misconduct. Plaintiff responds that the standard of care issue has been waived for purposes of review. In *Holt v. A. L. Salzman & Sons* (1967), 88 Ill. App. 2d 306, 232 N.E.2d 537, this court held that where defendant, an architectural firm, was charged with ordinary negligence in plaintiff's complaint, answered, and was tried on an ordinary negligence standard and not on a professional malpractice theory as urged on appeal, the standard of care issue had not been preserved for review.

■■ In the instant case, defense counsel did not contest the application of a standard of ordinary care during the conference on its motion for a directed verdict. Nor did defendant object to plaintiff's instruction which applied the ordinary care standard. At oral argument, defense counsel conceded that the failure to object operated as a waiver. (*Russo v. Kellogg* (1962), 37 Ill. App. 2d 336, 185 N.E.2d 377.) Consequently, defendant's acquiescence to a standard of ordinary care below now bars it from raising the issue of a different standard on appeal.

Defendant next contends the trial court erred when it adjudged defendant to be negligent and plaintiff to be free from contributory negligence. It argues that the trial court should have entered judgment notwithstanding the verdict on these issues and the judgment was against the manifest weight of the evidence.

■■ A judgment is not against the manifest weight of the evidence unless an opposite conclusion is clearly evident or the verdict is palpably erroneous and wholly unwarranted. (*Walters v. Taylor* (1976), 36 Ill. App. 3d 934, 344 N.E.2d 765.) Defendant could be found to have been negligent if it knew or its agents, the ushers, knew or should have known of the presence of a foreign substance, and failed to exercise ordinary care to protect plaintiff from injury. (*Papadatos v. National Tea Co.* (1974), 21 Ill. App. 3d 616, 316 N.E.2d 83.) Similarly, plaintiff could be found to have been free of contributory negligence if she acted in a reasonable manner based upon the facts of this case. (*Lubin v. Goldblatt Bros., Inc.* (1962), 37 Ill. App. 2d 437, 186 N.E.2d 64.) The jury was able to

observe the witnesses, consider their credibility, and disregard or disbelieve whatever facts were inconsistent with its conclusion. (*Guidani v. Cumerlato* (1965), 59 Ill. App. 2d 13, 207 N.E.2d 1.) Whether the trial court or this court could differ with the jury's conclusion is of no moment so long as reasonable persons could differ in their conclusions and the verdict is not against the manifest weight of the evidence.

■■ In the instant case, plaintiff testified that she was walking up the aisle at a normal pace and that she did not trip over her feet. She stated that the floor was "slippery." A maintenance man for the church testified that the aisle had been cleaned for Christmas and treated with a nonslippery sealer or a wax. Ushers Balog and Corbett testified that the aisle was wet. Corbett testified he mopped the aisle ten minutes before plaintiff fell. Other ushers stated they saw no one mop the aisle. The ushers had been instructed to mop the aisle whenever necessary, yet several stated they would not mop the aisle. After considering this evidence we cannot say the jury's verdict was palpably erroneous or wholly unwarranted. (Compare *Schmidt v. Cenacle Convent* (1967), 86 Ill. App. 2d 150, 229 N.E.2d 413, with *Guidani v. Cumerlato* (1965), 59 Ill. App. 2d 13, 207 N.E.2d 1.) Having decided that defendant's argument is insufficient to reverse the verdict as being against the manifest weight of the evidence, it logically follows that defendant could not meet the even stricter requirements for judgment notwithstanding the verdict. (*Brostoff v. Maida* (1977), 45 Ill. App. 3d 871, 360 N.E.2d 568.) There, all the evidence must be viewed in a light most favorable to plaintiff and then so overwhelmingly favor defendant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) When the *Pedrick* rule is applied to the facts of this case, defendant's argument must be rejected.

■■ Defendant finally contends the trial court erred by allowing plaintiff's counsel to improperly argue to the jury. Remarks which inflame the passions or prejudices of the jury constitute reversible error. (*Johnson v. Chicago Transit Authority* (1973), 11 Ill. App. 3d 16, 295 N.E.2d 573.) However, it is within the sound discretion of the trial court to determine whether arguments are inflammatory because it has the superior opportunity to observe the impact of the remarks on the jury. *Walters v. Taylor* (1976), 36 Ill. App. 3d 934, 344 N.E.2d 765.

In the first instance, counsel argued "How would you like to have a headache * * * How much would you take?" Defense counsel immediately objected and the trial court sustained the objection. Thereafter, counsel urged the jury to apply an objective, reasonable man standard to the computation of damages. In light of the trial court's immediate ruling and our own review of the entire argument, especially those portions immediately preceding and following the objectionable

statements, we cannot say the trial court abused its discretionary powers by determining these remarks did not inflame the passions and prejudices of the jury. *Offutt v. Pennoyer Merchants Transfer Co.* (1976), 36 Ill. App. 3d 194, 343 N.E.2d 665; *Goldstein v. Hertz Corp.* (1973), 16 Ill. App. 3d 89, 305 N.E.2d 617.

■■ In the second instance, counsel was discussing the amount of damages due for pain and suffering, and stated "we're suggesting a figure to you of $10 a day." It is error for counsel to urge a *per diem* formula for computing damages for pain and suffering. (*Caley v. Manicke* (1962), 24 Ill. 2d 390, 182 N.E.2d 206.) However, this court has held in *Fortner v. McDermott* (1971), 1 Ill. App. 3d 358, 272 N.E.2d 503, and in *Warp v. Whitmore* (1970), 123 Ill. App. 2d 157, 260 N.E.2d 45, that similar fixed time formulas did not constitute reversible error. There, counsel's argument merely suggested a formula, but did not argue that it represented the only or the correct approach for computing damages for pain and suffering. There too, defense counsel did not object to the improper arguments. Here, counsel also merely suggested a *per diem* formula. In contrast to the cited cases, defendant objected to this argument, but that objection was sustained and the trial court immediately instructed the jury to disregard "references to arguments of so much a day." In addition, when the extent of plaintiff's injury, the multiple operations, the long period of recovery and the special damages of $4,329.84 are compared with the verdict of only $9,000 we cannot say the trial court abused its discretionary powers by finding this error was not prejudicial. (Compare *Pearson v. Ford Motor Co.* (1975), 32 Ill. App. 3d 188, 336 N.E.2d 528.) Therefore, we reject defendant's final contention.

Because we have held that defendant was liable for plaintiff's injuries, the dependent claim of plaintiff Victor Fintak for loss of consortium is similarly affirmed.

For the reasons given the judgments of the circuit court are affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.