2018 UT App 97

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LINDA IRENE SOSA,
Appellant.

Opinion
No. 20150998-CA
Filed June 1, 2018

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 131907989

Debra M. Nelson and Andrea J. Garland, Attorneys
for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

TOOMEY, Judge:

¶1    Linda Irene Sosa entered a *Sery* plea[1] to two counts of possession of a controlled substance. On appeal, Sosa contends the district court erred in denying her motion to suppress

---

1. A *Sery* plea allows a defendant to enter a guilty plea, "with the consent of the prosecution and accepted by the trial judge," without forfeiting the ability to appeal the denial of a motion to suppress and to withdraw the plea "if [the] arguments in favor of suppression are accepted" on appeal. *State v. Sery*, 758 P.2d 935, 938–40 (Utah Ct. App. 1988), *disagreed with on other grounds by State v. Peña*, 869 P.2d 932 (Utah 1994).

because the police violated her Fourth Amendment rights by unreasonably extending a routine traffic stop to conduct a dog sniff. We affirm.

¶2 A police officer (Sergeant) initiated a traffic stop after witnessing a vehicle's driver make an improper right turn. Sergeant approached the vehicle and asked the driver for her identification. While speaking with the driver, Sergeant recognized the passenger, Sosa, from a prior arrest for a weapons offense and asked if she had any weapons on her. She responded that she did not. Three minutes into the traffic stop, Sergeant took the driver's information back to his patrol vehicle and ran a records check. At the same time, he requested a police dog unit to assist him.

¶3 A second officer (Officer) arrived with his police dog within five minutes of the request—just eight minutes after Sergeant initiated the stop. Sergeant was still running the records check when Officer arrived, and at that point, Sergeant asked Officer to run his dog around the vehicle to sniff for controlled substances. The dog alerted to the presence of a controlled substance during the exterior sniff and alerted again on two items within the vehicle during the interior sniff. Officer found what appeared to be controlled substances and drug paraphernalia inside Sosa's purse and a camera bag. During a search incident to arrest, Sosa informed a third officer that she had methamphetamine and "a dollar bill with powder cocaine" on her person. The substances field-tested positive for cocaine and methamphetamine, and eleven tablets were identified as hydrocodone.

¶4 The State charged Sosa with three counts of possession of a controlled substance and one count of use or possession of paraphernalia. She filed numerous motions to suppress the evidence obtained during the search, alleging violations of both the Fourth Amendment to the United States Constitution and Article I, section 14 of the Utah Constitution. After an

evidentiary hearing, the district court denied all of Sosa's motions to suppress. It found that the dog sniff of the exterior of the vehicle "lasted only approximately 30 seconds," and it concluded that this "did not result in any delay at all in [Sergeant's] preparation of the citation" and "did not extend the scope of the traffic stop."

¶5 Following the denial of her motions to suppress, and after this court denied her petition for interlocutory appeal, Sosa entered a *Sery* plea to two counts of third-degree felony possession of a controlled substance, reserving her right to appeal the denial of her motions to suppress. Sosa appeals.

¶6 "We review a denial of a motion to suppress as a mixed question of law and fact and will disturb the district court's factual findings only when they are clearly erroneous, but we afford no deference to the district court's application of law to the underlying factual findings." *State v. Paredez*, 2017 UT App 220, ¶ 11, 409 P.3d 125 (quotation simplified).

¶7 Sosa contends the district court erred in denying her motions to suppress because Sergeant violated her Fourth Amendment rights when he "extended a routine traffic stop in order to conduct a [controlled substance] dog sniff" without reasonable suspicion.[2] Specifically, she argues that Sergeant was distracted from completing the stop's "mission" when he called the police dog unit and then when he reiterated the request for a sniff upon the unit's arrival. We disagree.

---

2. Although her motions to suppress were originally based on violations of both the United States Constitution and the Utah Constitution, Sosa has apparently abandoned her state constitutional arguments on appeal, as those arguments have not been briefed.

¶8 The Fourth Amendment to the United States Constitution protects citizens from "unreasonable searches and seizures." U.S. Const. amend. IV. "The 'touchstone of the Fourth Amendment is reasonableness,' which 'is measured in objective terms by examining the totality of the circumstances.'" *State v. Baker*, 2010 UT 18, ¶ 10, 229 P.3d 650 (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)) (quotation simplified). Though warrants are required for most searches and seizures, there is an "automobile exception" that allows officers to "temporarily detain a vehicle and its occupants upon reasonable suspicion of criminal activity for the purpose of conducting a limited investigation of the suspicion." *Id.* ¶ 11 (quotation simplified).

¶9 "[T]o determine whether a traffic stop is reasonable under the Fourth Amendment," we apply a two-step test: (1) was the traffic stop lawful at its inception and (2) was the detention following the stop "reasonably related in scope to the circumstances that justified" the stop. *Id.* ¶ 12 (quotation simplified).

¶10 Here, it is undisputed that the traffic stop was lawful at its inception, because Sergeant observed the driver commit a traffic violation. We therefore must address whether it was reasonable for Sergeant to request that a police dog sniff the vehicle while he was processing the driver's information and completing a traffic citation. Generally, the tolerable duration of a traffic stop is determined by its "mission," which is "to address the traffic violation that warranted the stop." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (quotation simplified). An officer's mission during a traffic stop typically includes running a records check: that is, "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 1615. "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those

inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *see also Baker*, 2010 UT 18, ¶ 13 (explaining that "[i]f, during the scope of the traffic stop, the officer forms new reasonable articulable suspicion of criminal activity, the officer may also expediently investigate his new suspicion").

¶11　Sosa cites *Rodriguez* and *Baker* in support of her contention that the request for the police dog unreasonably prolonged the traffic stop. In *Rodriguez*, the United States Supreme Court was asked to determine "whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." 135 S. Ct. at 1614. The officer in *Rodriguez* ran a records check of both the driver and passenger and then issued a citation, which upon issuance, completed the mission of the traffic stop. *Id.* at 1613. The officer then requested to search the vehicle, and after Rodriguez refused to consent, the officer detained Rodriguez and the passenger until the police dog unit arrived and conducted the sniff. *Id.* The Court determined that the "critical question" "is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff prolongs—i.e., adds time to—the stop." *Id.* at 1616 (quotation simplified). Because this detainment prolonged the traffic stop, the Court remanded the case to the Eighth Circuit Court of Appeals to determine whether there was reasonable suspicion of criminal activity, independent from the initial traffic stop, to justify prolonging the stop. *Id.* at 1616–17. Similarly, in *Baker*, the Utah Supreme Court held that "the officers impermissibly detained [a passenger]" to conduct a dog sniff after the purpose of the initial traffic stop had ended, "which was to investigate and then arrest the vehicle driver." 2010 UT 18, ¶¶ 9, 58.

¶12　This case is distinguishable from *Rodriguez* and *Baker*, because the request for a dog sniff and the resulting alert occurred during the traffic stop, not after its completion. And

based on the record before us, we cannot agree with Sosa's argument that "instead of processing the legitimate tasks of a traffic stop," Sergeant added "more time than necessary" to complete the mission of the stop. There is no evidence to suggest that Sergeant was ever distracted to the point that he delayed completing the traffic stop for even a few seconds. At best, Sergeant testified that he was not doing "two things at the same time" when he requested the dog sniff. But without more, we do not know whether Sergeant's multi-tasking caused an actual delay. For instance, Sergeant may have been waiting for police dispatch to relay to him the results of the records check when he made the request for the dog sniff. We wonder whether a few-second distraction from an officer's focus on resolving the traffic offense would violate the Fourth Amendment even if it could be shown to have caused a corresponding few-second delay in the overall duration of the traffic stop, but we need not directly answer that question here, because there is no support for that factual conclusion in the record.

¶13    Instead, this case aligns more closely with *Illinois v. Caballes*, 543 U.S. 405 (2005). In *Caballes*, the officer who initiated the stop radioed police dispatch to record the initiation of the stop, and a police dog unit arrived on the scene without a request. *Id.* at 406. The United States Supreme Court determined that the dog sniff was not a Fourth Amendment violation because it occurred "while [Caballes] was lawfully seized for a traffic violation." *Id.* at 409. Here, Sergeant initiated the traffic stop, and while he continued to complete the mission of the stop, he requested the police dog unit. Officer arrived and used the dog to conduct the sniff before Sergeant had completed the records check. Although Sergeant requested the sniff, unlike the officer in *Caballes*, Sosa and the driver were similarly "lawfully seized for a traffic violation" at the time. *See id.* The sniff lasted thirty seconds and indicated the presence of a controlled substance. At this point, there was reasonable suspicion of criminal activity independent of the initial traffic stop and

further temporary detention based on the controlled substance alert was reasonable to investigate the suspected criminal activity. *Cf. Rodriguez*, 135 S. Ct. at 1616–17 (remanding to determine whether "reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction investigation"); *see also Baker*, 2010 UT 18, ¶ 13.

¶14　Without evidence of an actual distraction that resulted in a delayed completion of the traffic stop, Sergeant's request for the dog sniff and renewed request upon the unit's arrival that occurred while he was completing the records check did not violate the Fourth Amendment. Accordingly, we affirm.

—————