2019 UT App 40

# THE UTAH COURT OF APPEALS

RIA WILLIAMS,
Appellant,
*v.*
KINGDOM HALL OF JEHOVAH'S WITNESSES, ROY UTAH;
WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK INC;
HARRY DIAMANTI; ERIC STOCKER; RAULON HICKS; AND
DAN HARPER,
Appellees.

Opinion
No. 20170783-CA
Filed March 21, 2019

Second District Court, Ogden Department
The Honorable Mark R. DeCaria
No. 160906025

John M. Webster and Matthew G. Koyle, Attorneys
for Appellant

Karra J. Porter and Kristen C. Kiburtz, Attorneys
for Appellees

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

APPLEBY, Judge:

¶1     Ria Williams appeals the district court's dismissal of her tort claims for negligent infliction of emotional distress and intentional infliction of emotional distress against defendants Kingdom Hall of Jehovah's Witnesses, Roy Utah; Watchtower Bible and Tract Society of New York Inc.; Harry Diamanti; Eric Stocker; Raulon Hicks; and Dan Harper (collectively, the Church). We affirm.

BACKGROUND

¶2 Williams and her family attended the Roy Congregation of Jehovah's Witnesses.[1] In the summer of 2007, Williams met another Jehovah's Witnesses congregant ("Church Member"). Williams and Church Member began seeing each other socially, but the relationship quickly changed and throughout the rest of the year Church Member physically and sexually assaulted Williams, who was a minor.

¶3 In early 2008 the Church began investigating Williams to determine whether she engaged in "porneia," a serious sin defined by Jehovah's Witnesses as "[u]nclean sexual conduct that is contrary to 'normal' behavior." Porneia includes "sexual conduct between individuals who are not married to each other." The Church convened a "judicial committee" to "determine if [Williams] had in fact engaged in porneia and if so, if was she sufficiently repentant for doing so." A group of three elders (the Elders)[2] presided over the judicial committee. Williams voluntarily attended the judicial committee with her mother and step-father. The Elders questioned Williams for forty-five minutes regarding her sexual conduct with Church Member.[3]

---

1. "Because this is an appeal from a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure, we review only the facts alleged in the complaint." *Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 2, 21 P.3d 198 (quotation simplified).

2. Elders are leaders of local congregations and are responsible for the daily operations and governance of their congregations.

3. Williams alleged in her complaint that although church policy requires elders to conduct judicial committees to investigate

(continued…)

¶4    After questioning Williams about her sexual conduct, the Elders played an audio recording of Church Member raping Williams. Church Member recorded this incident and gave it to the Elders during their investigation of Williams. The recording was "several hours" in length. Williams cried and protested as the Elders replayed the recording. The Elders played the recording for "four to five hours" stopping and starting it to ask Williams whether she consented to the sexual acts. During the meeting Williams was "crying and physically quivering." Williams conceded she was able to leave but risked being disfellowshipped if she did.[4]

¶5    Williams continues to experience distress as a result of her meeting with the Elders. Her symptoms include "embarrassment, loss of self-esteem, disgrace, humiliation, loss of enjoyment of life," and spiritual suffering. Williams filed a complaint against the Church for negligence, negligent supervision, failure to warn, and intentional infliction of emotional distress (IIED).

¶6    In response to her complaint, the Church filed a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure. Williams filed an amended complaint dropping her negligence claims and adding a claim for negligent infliction of emotional distress (NIED) to the IIED claim. The Church filed a second motion to dismiss under rule 12(b)(6). The motion argued the

---

(…continued)
claims of sexual abuse, the Church does not train them on how to interview children who are victims of sexual abuse.

4. Disfellowship is expulsion from the congregation. When someone is disfellowshipped, an announcement is made to the congregation that the member is no longer a member of the Jehovah's Witnesses, but no details are given regarding the nature of the perceived wrongdoing.

United States and Utah constitutions barred Williams's claims for IIED and NIED.[5]

¶7     After considering the motions and hearing argument the district court dismissed Williams's amended complaint. It ruled that the First Amendment to the United States Constitution bars Williams's claims for NIED and IIED. The court ruled that Williams's claims "expressly implicate key religious questions regarding religious rules, standards, . . . discipline, [and] most prominently how a religion conducts its ecclesiastical disciplinary hearings." Although the allegations in the complaint were "disturbing" to the court, it ruled that the conduct was protected by the First Amendment and adjudicating Williams's claims would create unconstitutional entanglement with religious doctrine and practices. Williams appeals.


ISSUES AND STANDARDS OF REVIEW

¶8     Williams argues the district court erred in dismissing her amended complaint. When reviewing appeals from a motion to dismiss, we "review only the facts alleged in the complaint." *Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 2, 21 P.3d 198 (quotation simplified). We "accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff." *Id.* (quotation simplified). We will affirm a district court's dismissal if "it is apparent that as a matter of law, the plaintiff could not recover under the facts alleged." *Id.* ¶ 10 (quotation simplified). "Because we consider only the legal sufficiency of the complaint, we grant the trial court's ruling no

---

5. The Church also argued Williams's claim for IIED failed because the conduct was not "outrageous" as a matter of law and her claim for NIED failed because Williams did not allege sufficient facts to support it.

deference" and review it for correctness. *Id.* (quotation simplified).

ANALYSIS

¶9 Williams argues the First Amendment to the United States Constitution does not bar her claim for IIED.[6] Specifically, she contends the Elders' conduct was not religiously prescribed and therefore adjudicating her claims does not violate the Establishment Clause.[7]

¶10 The First Amendment to the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise

---

6. Arguments under both the Utah and United States constitutions were presented to the district court. But the court determined dismissal was required under the federal constitution and did not reach the state constitutional analysis. Williams focuses her arguments on appeal on the federal constitution and does not argue the district court erred in failing to consider the Utah Constitution. As a result we likewise focus our analysis on the federal constitution. *See State v. Worwood*, 2007 UT 47, ¶ 18, 164 P.3d 397 ("When parties fail to direct their argument to the state constitutional issue, our ability to formulate an independent body of state constitutional law is compromised."); *see also State v. Sosa*, 2018 UT App 97, ¶ 7 n.2, 427 P.3d 448 (stating that although arguments under both the state and federal constitutions were made to the district court, we will not consider both constitutions when the appellant only makes arguments under the federal constitution).

7. "[B]ecause the Establishment Clause is dispositive of the issues before us, we do not address the Free Exercise Clause." *Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 11 n.8, 21 P.3d 198.

thereof." U.S. Const. amend. I. These provisions are known as the Establishment Clause and the Free Exercise Clause and they apply to the states through the Fourteenth Amendment. *Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 11, 21 P.3d 198 (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)).

¶11 In *Franco*, the Utah Supreme Court applied what is known as the *Lemon* test to determine "whether government activity constitutes a law respecting an establishment of religion" under the Establishment Clause. *Id.* ¶ 13 (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971)). This test requires the government action "(1) must have a secular legislative purpose, (2) must neither advance nor inhibit religion, and (3) must not foster an excessive government entanglement with religion." *Id.* (quotation simplified).

¶12 Courts focus on the third prong of the test, "excessive government entanglement," when looking to determine clergy liability for tortious conduct. *Id.* Entanglement "is, by necessity, one of degree" because not all government contact with religion is forbidden. *Id.* ¶ 14. "[T]he entanglement doctrine does not bar tort claims against clergy for misconduct not within the purview of the First Amendment, because the claims are unrelated to the religious efforts of a cleric." *Id.* But tort claims "that require the courts to review and interpret church law, policies, or practices in the determination of the claims are barred" by the entanglement doctrine. *Id.* ¶ 15.

¶13 Some tort claims do not run afoul of the Establishment Clause because they do not require any inquiry into church practices or beliefs. *Id.* ¶ 14. For example, "slip and fall" tort claims against churches have been upheld because the tortious conduct was "unrelated to the religious efforts of a cleric." *Id.* (citing *Heath v. First Baptist Church*, 341 So. 2d 265 (Fla. Dist. Ct. App. 1977)); *see also Fintak v. Catholic Bishop of Chi.*, 366 N.E.2d 480 (Ill. App. Ct. 1977); *Bass v. Aetna Ins. Co.*, 370 So. 2d 511 (La. 1979).

¶14 But the Utah Supreme Court has rejected tort claims against church entities for "clergy malpractice" as well as other negligence-based torts that implicate policies or beliefs of a religion. *Franco*, 2001 UT 25, ¶¶ 16–19. "[I]t is well settled that civil tort claims against clerics that require the courts to review and interpret church law, policies, or practices in the determination of the claims are barred by the First Amendment under the entanglement doctrine." *Id.* ¶ 15. It is important that churches "have power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Id.* (quotation simplified).

¶15 Allowing Williams's claims in this case to be litigated would require the district court to unconstitutionally inject itself into substantive ecclesiastical matters. Williams argues she is not challenging the Church's ability to determine what constitutes "sinful behavior," its ability to convene a judicial committee to investigate whether a member has engaged in "sinful behavior," or its ability to punish members based on a finding of "sinful behavior." But Williams asks the factfinder to assess the manner in which the Church conducted a religious judicial committee, which requires it to assess religiously prescribed conduct. *See, e.g.*, *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002) (holding that a plaintiff's sexual harassment lawsuit was properly dismissed because the statements were "not purely secular disputes with third parties, but were part of an internal ecclesiastical dispute and dialogue protected by the First Amendment"); *Stepek v. Doe*, 910 N.E.2d 655, 668 (Ill. App. Ct. 2009) (holding that "resolving this [defamation] dispute would involve the secular court interfering with the Church's internal disciplinary proceedings" where the plaintiff's claim is based on the statements made in a disciplinary setting); *In re Goodwin*, 293 S.W.3d 742, 749 (Tex. App. 2009) (dismissing a claim for IIED against a church for the method in which it punished a member because it would "require an inquiry into the truth or falsity of religious beliefs" (quotation simplified)). Adjudicating Williams's claims would involve excessive government entanglement with the Church's

"religious operations, the interpretation of its teachings" and "the governance of its affairs." *Gulbraa v. Corp. of the President of the Church of Jesus Christ of Latter-day Saints*, 2007 UT App 126, ¶ 25, 159 P.3d 392. This subjects the Church to "judicial oversight in violation of the Establishment Clause of the United States Constitution." *Id.*

¶16 Williams argues the factfinder need not consider ecclesiastical matters to adjudicate her claim for IIED and that she merely seeks to utilize generally applicable tort law. But the issue is not whether the tort law itself is neutral and generally applicable. The issue is whether the tort law being applied is used to evaluate religious activity in violation of the Establishment Clause. In this case, Williams asks the factfinder to interpret the "outrageousness" of the Church's conduct in investigating her alleged sins. *See Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 905 (Utah 1992) (noting the elements of IIED include intentional conduct by the defendant toward the plaintiff that is "outrageous and intolerable in that it offends generally accepted standards of decency and morality"). Because Williams's IIED claim asks the factfinder to assess the "outrageousness" of a religious practice, this violates the Establishment Clause. *See Franco*, 2001 UT 25, ¶ 15 (holding that claims that require courts to interpret religious practices or beliefs are barred by the Establishment Clause).

¶17 This case is distinguishable from *Gulbraa*, in which this court allowed the plaintiff's IIED claim against a religious entity to proceed. 2007 UT App 126, ¶ 22. In *Gulbraa* the plaintiff claimed emotional distress as a result of the church's conduct in concealing the location of his children. *Id.* This court held this allegation involved "secular activity potentially amounting to a violation of generally applicable civil law" and therefore was not barred by the Establishment Clause. *Id.* (quotation simplified). Unlike the IIED claim in *Gulbraa*, Williams's IIED claim directly implicates religious activity not secular activity. And although Williams claims distress under a generally applicable law, the distress she experienced arose out of the manner in which the

Church conducted a religiously prescribed judicial committee to investigate her alleged sins.

¶18   We conclude Williams's claim for IIED requires an inquiry into the appropriateness of the Church's conduct in applying a religious practice and therefore violates the Establishment Clause of the First Amendment.[8]

CONCLUSION

¶19   The district court did not err in dismissing Williams's complaint as violating the Establishment Clause of the First Amendment. We affirm.

————————

8. Williams's claim for NIED also violates the Establishment Clause of the First Amendment. She alleges that the Elders were not properly trained on how to conduct interviews of "minor victim[s] of rape," and argues the Church "should have realized [this] conduct involved an unreasonable risk of emotional, psychological, and physical damage to [Williams]." But these claims implicate the entanglement doctrine of the Establishment Clause in the same way her IIED claim does. *See Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 23, 21 P.3d 198 (dismissing a claim for NIED because the plaintiff's claim that the church "generally mishandled their ecclesiastical counseling duties" required the court to establish a standard of care "to be followed by other reasonable clerics in the performance of their ecclesiastical counseling duties" which "would embroil the courts in establishing the training, skill, and standards applicable for members of the clergy in this state" and therefore violates the First Amendment). Accordingly, we determine the district court did not err in dismissing it.